

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 22, 2024**

*/s/ Mark X. Mullin*
**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| GRAND FUSION HOUSEWARES, LLC, | § | Case No. 24-41694 |
| | § | |
| Debtor. | § | |

**INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND PROVIDING PARTIAL ADEQUATE PROTECTION AND GRANTING LIENS AND SECURITY INTERESTS**

**THIS MATTER** came before the Court upon the *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection for the Use Thereof; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* (the "Motion")[1] filed on May 16, 2024 by Grand Fusion Housewares, LLC as the above-captioned debtor and debtor-in-possession (the "Debtor"), to approve the use of cash collateral. Based upon (i) any stipulations and agreement upon terms for the Debtor's use of Cash Collateral, as may be set forth herein below, (ii) the Motion, (iii) the evidence admitted into

___

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the record at the hearing, and (iv) the representations of the Debtor, the Court hereby **FINDS** and **CONCLUDES** as follows:

  A. This Court has jurisdiction over this proceeding, the parties, and the property of the Debtor's estate pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The relief granted herein is necessary within the first twenty-one (21) days of the Debtor's bankruptcy case in order to avoid immediate and irreparable harm to the Debtor and its estate and creditors, as contemplated by Fed. R. Bankr. P. 6003, to the extent such rule is applicable to this Motion.

  B. Under the circumstances, the Debtor has provided sufficient and adequate notice of the Motion and the hearing on the Motion to all creditors and other parties in interest entitled to such notice pursuant to Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002, 4001(b), 9006, and as required by Sections 102, 361, 362, and 363 of Title 11 of the United States Code (the "Bankruptcy Code"). Other than the notice provided for by this Order, no further notice of the Motion or hearing is necessary or required.

  C. On May 16, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

  D. The Debtor asserts that an immediate and critical need exists for the Debtor to use cash in order to continue the operation of its business. Without such funds, the Debtor asserts that it will not be able to pay post-petition operating expenses and obtain goods and services needed to carry on its businesses in a manner that will avoid irreparable harm to its estate. At this time, the Debtor asserts that its ability to use cash is necessary to preserve and maintain the going concern value of its estate.

E. The Senior Prepetition Secured Parties assert they are secured in substantially all Debtor's accounts, equipment, inventory, and certain other assets as more particularly delineated in the Motion (collectively, the "Prepetition Collateral") and the proceeds thereof (the "Cash Collateral"). The Prepetition Collateral and the Cash Collateral are collectively referred to as the "Collateral." The Junior Lienholders may have a security interest and lien on certain of the Debtor's Prepetition Collateral that is subordinate and junior to the liens and security interests of the Senior Prepetition Secured Parties.

F. The Debtor seeks authorization to use the Cash Collateral to pay its ordinary and necessary operating expenses set forth in the budget attached hereto as **Exhibit 1** (the "Budget") for the period from the Petition Date through and including June 17, 2024 (the "Termination Date") pursuant to the terms of this Order.

G. Good cause has been shown for the entry of this Order. The Debtor requires the use of Cash Collateral to operate its business. Without the use of Cash Collateral, the Debtor will not be able to meet its cash requirement for working capital needs or to fund the administration of this Chapter 11 case. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are expected to provide adequate protection for the Prepetition Secured Parties' interests in the Collateral solely for the interim period under this Order.

H. The Court concludes that entry of this Order is in the best interest of the Debtor, its estate, and the estate's creditors, as its implementation will, *inter alia*, allow for the continued operation and preservation of the going concern value of the Debtor's business.

## ORDER

Based upon the above findings and conclusions, the Court, having reviewed the Motion,

considered the evidence presented and representations of the Debtor, and otherwise being fully advised, hereby **ORDERS** as follows:

1. **Interim Order.** This Order shall be considered an interim cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed under Chapter 11 or Subchapter V of Chapter 11 of the Bankruptcy Code.

2. **Good Cause.** Good cause has been shown for the entry of this Order. The entry of this Order is in the best interests of the Debtor, its creditors, and its estate. The terms and conditions of the use of Cash Collateral and the security interests, liens, rights, and priorities granted to the Prepetition Secured Parties hereunder are fair and appropriate under the circumstances.

3. **Terms of Cash Collateral Use.** The Debtor is hereby authorized to use the Cash Collateral strictly in accordance with the terms of the Budget and this Order. The Debtor shall not incur expenses for any line item in the Budget by more than 15% without the prior written approval of the Senior Prepetition Secured Parties or order of the Court. Additionally, the Debtor shall not exceed the aggregate of all the line items in the Budget by more than 15% without approval of the Senior Prepetition Secured Parties or order of the Court. The Debtor shall not use Cash Collateral to pursue any claims or causes of action against the Senior Prepetition Secured Parties or to challenge, contest, or defend against the claims and liens of the Senior Prepetition Secured Parties. To the extent that the Court does not hold a final hearing on the Motion prior to the Termination Date, use of Cash Collateral shall continue under this Order if the Debtor submits additional monthly budgets to the Senior Prepetition Secured Parties for their approval (the "Subsequent Budgets"). The Subsequent Budgets shall detail the Debtor's proposed continued use of Cash Collateral to pay its ordinary operating expenses. The Subsequent Budgets, if approved by the

Senior Prepetition Secured Parties, shall be incorporated herein, and subject to the terms of this Order.

4. The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Order in the amounts and for the expenses set forth on the Budget and the Subsequent Budgets. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues.

5. **Form of Adequate Protection Approved.** The form and manner of adequate protection requested in the Motion is hereby approved and sufficient to protect the Prepetition Secured Parties' interests in the Cash Collateral.

6. **Adequate Protection Payments**. As adequate protection for the Senior Prepetition Secured Parties' interest in the Debtor's Cash Collateral, each of the Senior Prepetition Secured Parties—Midwest, Celtic, and the SBA—will be paid the regular monthly principal and interest due on their respective loans. As of the entry of this Order, the regular monthly principal and interest payments are as follows: Midwest Regional - $4,351.54; Celtic - $1,957.00; and SBA - $1,649.00.

7. **Adequate Protection – Replacement Liens.** Subject and subordinate to the Carve-Out (defined below), as partial adequate protection for the Debtor's use of Cash Collateral, the Prepetition Secured Parties are hereby granted, to the extent of any diminution in value of their interests in the Prepetition Collateral, effective as of the Petition Date, valid, binding, enforceable, and automatically perfected post-petition liens (the "Adequate Protection Liens") pursuant to 11 U.S.C. § 361(2) in the Debtor's accounts, accounts receivable, inventory, and other assets generated by or received by the Debtor from the Prepetition Collateral subsequent to the Petition Date to the same extent and same order and priority existing as of the Petition Date, but only to

Document Page 6 of 11

the extent that the Prepetition Secured Parties had a valid, perfected prepetition lien and security interest in such collateral as of the Petition Date and only to the extent that the diminution in value was not caused, in whole or in part, by the Prepetition Secured Parties, but in all cases subject and subordinate to the Carve-Out. This additional adequate protection is being given to the extent of any decrease in value of the Prepetition Collateral and Cash Collateral as a result of the Debtors' post-petition use. The Debtor shall execute and deliver to the Prepetition Secured Parties, if applicable, all such agreements, financing statements, instruments and other documents as the Prepetition Secured Parties may reasonably request to evidence, confirm, validate or perfect the liens granted pursuant hereto. This additional adequate protection is provided only to the extent and priority of the Prepetition Secured Parties' properly perfected security interests in the Prepetition Collateral and the Debtor reserves all rights to contest same. The priority of any Adequate Protection Liens granted to the Prepetition Secured Parties shall be in the same nature, extent, order, and priority as existing on the Petition Date.

8. To the extent that 11 U.S.C. § 362, or any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the lien and security interest authorized or created in this Order, or otherwise would impose filing or registration requirements with respect to such replacement liens, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, other applicable federal law, and the judicial power of the United States Bankruptcy Court. The liens and interests granted to the Prepetition Secured Parties by and through this Order do not require filing, recording, or perfecting and shall be binding and fully enforceable by the entry of this Order; however, the Debtor shall execute any additional instruments required by the Prepetition Secured Parties to evidence the post-petition liens and security interests granted herein.

9. Nothing contained in this Order should be construed as granting any liens on Chapter 5 causes of action or on any other property in which the Prepetition Secured Parties do not already have valid and existing pre-petition liens.

10. Nothing contained in this Order shall be deemed to be a consent by the Prepetition Secured Parties to any charge, lien, assessment, or claim against their collateral under 11 U.S.C. § 506(c), or otherwise, and shall be without prejudice to any and all of the Prepetition Secured Parties' respective rights under the Bankruptcy Code and other applicable law.

11. **Carve Out**. The use of Cash Collateral and the Adequate Protection Liens shall be subordinate and subject to (a) any and all post-petition fees and expenses of the Clerk of the Court and statutory fees and compensation payable to the Subchapter V Trustee; and (b) all post-petition fees and expenses of Debtor's counsel and all other estate professionals employed by order of the Court (collectively, the "Carve Out"). The Debtor shall first use unencumbered cash, if any, to fund the Carve Out. The Senior Prepetition Secured Parties reserve the right to object to any fees or expenses of any estate professional.

12. **Termination and Defaults Under the Order.** Unless specifically waived in writing by the Senior Prepetition Secured Parties (which waiver shall not be implied from any unwritten action, inaction, course of conduct or acquiescence by the Senior Prepetition Secured Parties), the Debtor's right and authority to use Cash Collateral shall immediately terminate upon the occurrence of any of the following (each, an "Event of Default"), ***provided, however***, that for any alleged Event of Default other than a conversion of the case under subsection a., the party asserting the Event of Default shall provide the Debtor with advance written notice and a seven-day period in which the Debtor may cure the alleged Event of Default before any Event of Default occurs:

a. Conversion of the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code;

b. The lifting of the automatic stay for any other party other than the Prepetition Secured Parties authorizing such party to proceed directly against the Cash Collateral, or entry of a final order by the bankruptcy court authorizing any party (including any Senior Prepetition Secured Party) to foreclose or otherwise enforce any lien or other right such other party may have in and to the Property and/or any part of the Collateral; or

c. Default by the Debtor under any term of this Order.

13. **Expiration of Right to Use Cash Collateral.** Unless otherwise agreed to in writing by the Senior Prepetition Secured Parties, the Debtor's right to use Cash Collateral shall expire on the earlier of: (a) the Termination Date, unless extended by the terms of this Order; (b) an uncured Event of Default (as defined herein); or (c) the Court entering a subsequent order terminating the Debtor's right to use Cash Collateral.

14. **Reservations of Rights.** Subject to and notwithstanding anything to the contrary in this Order, the entry of this Order is without prejudice to any and all rights, remedies and claims that the Prepetition Secured Parties and the Debtor may have against each other or third parties, and does not bar or limit the Prepetition Secured Parties or the Debtor from seeking further or additional relief including, *inter alia*, seeking additional adequate protection and seeking to terminate or modify the automatic stay.

15. **Binding Effect of Order.** Subject to all reservations of rights in this Order, the provisions of this Order shall inure to the benefit of the Debtor and the Prepetition Secured Parties, and shall be binding upon the Debtor, the Prepetition Secured Parties, and their respective

successors and assigns, including any trustee, agent, administrator or other fiduciary hereafter appointed as legal representative of the Debtor, or with respect to property of the Debtor's estate, whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case, and shall also be binding upon all creditors of the Debtor and all other parties in interest, except as expressly set forth herein.

16. **Subsequent Modification of Order.** If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor to the Prepetition Secured Parties from the Petition Date through the effective date of such modification, vacation or stay, or the validity or enforceability of any security interest, lien or priority authorized or created by this Order.

17. **Effective Date and Termination Date.** This Order shall be effective as of the Petition Date, upon entry by the Court, and may be relied upon by the Prepetition Secured Parties and the Debtor without the necessity of entry into the docket sheet of this case. To the extent any findings of fact may constitute conclusions of law, and *vice versa*, they are hereby deemed as such. The Debtor's authority to use Cash Collateral under this Order expires at 11:59 p.m. (prevailing Central Time) on the Termination Date, unless extended as provided in this Order and/or by further order of the Court.

18. **Immediate Effect**. Notwithstanding any Bankruptcy Rule to the contrary, this Order is effective immediately upon its entry.

19. **Final Hearing**. A final hearing (the "Final Hearing") on the Motion shall take place on **June 13, 2024, at 2:00 p.m.**, prevailing Central Time before the Honorable Mark X. Mullin, United States Bankruptcy Judge for the Northern District of Texas, Fort Worth Division, which

hearing shall take place at (i) Room 128, U.S. Courthouse, 501 W. Tenth Street, Fort Worth, Texas 76102, and (ii) via WebEx at https://us-courts.webex.com/meet/mullin.

20. **Objections:** Any objections or responses to entry of a final order on the Motion shall be filed on or before **June 5, 2024**. In the event no objections to entry of a final order on the Motion are timely filed, the Bankruptcy Court may enter such final order without need for the Final Hearing.

### ### END OF ORDER ###

Order submitted by:

Bryan C. Assink
Texas State Bar No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: bryan.assink@bondsellis.com

**PROPOSED COUNSEL FOR
DEBTOR AND DEBTOR-IN-POSSESSION**

EXHIBIT 1

**Grand Fusion Housewares LLC**
**4 week cashflow forecast (estimated)**

| | Week >> | 1 | 2 | 3 | 4 | |
|---|---|---|---|---|---|---|
| | Week ending | 5/27/2024 | 6/3/2024 | 6/10/2024 | 6/17/2024 | Total |
| Bank Balance - opening | | $ 98,952.06 | $ 103,504.06 | $ 101,997.15 | $ 86,977.35 | |
| Net Movement | | $ 4,552.00 | $ (1,506.91) | $ (15,019.80) | $ (5,351.00) | |
| Bank Balance - closing | | $ 103,504.06 | $ 101,997.15 | $ 86,977.35 | $ 81,626.35 | |
| | | | | | | |
| **Accounts Receivable** | | $ 6,744.74 | $ 43,895.67 | $ - | $ - | $ 50,640.41 |
| Collections | | $ 6,744.74 | $ 8,033.09 | $ - | $ - | $ 14,777.83 |
| Cash sales / Closeout sales - still to invoice | | | | | | $ - |
| Equipment sales | | | | | | $ - |
| Sublease rent | | | $ 35,862.58 | | | $ 35,862.58 |
| Evriholder inv sales | | | | | | $ - |
| .com sales | | | | | $ - | $ - |
| | | | | | | |
| **Expenses** | | $ - | $ 38,062.58 | $ - | $ - | $ 38,062.58 |
| Rent | | | $ 35,862.58 | | | $ 35,862.58 |
| Sublease deposit | | | | | | $ - |
| Freight - move goods to CA | | | | | | $ - |
| Warehouse | | | $ 1,000.00 | | | $ 1,000.00 |
| Payroll | | | | | | $ - |
| Insurance | | | $ 1,200.00 | | | $ 1,200.00 |
| ADP Fees | | | | | | $ - |
| Legal fees | | | | | | $ - |
| Forklft settlement | | | | | | $ - |
| Commission | | | | | | $ - |
| | | | | | | |
| **Accounts Payable** | | $ 2,192.74 | $ 4,533.00 | $ 13,370.80 | $ - | $ 20,096.54 |
| Elizabeth Djinga | | $ 198.80 | | | | $ 198.80 |
| Cixi - Inventory for amazon | | | | | | $ - |
| Renco - Inventory for amazon | | | | $ 12,574.80 | | $ 12,574.80 |
| Quickbooks | | | | $ 796.00 | | $ 796.00 |
| Summit Hosting | | | $ 384.00 | | | $ 384.00 |
| Atomic Hosting | | $ 1,000.00 | | | | $ 1,000.00 |
| Guidant (401k) | | | $ 149.00 | | | $ 149.00 |
| Zibo | | | | | | $ - |
| Bryan - Amazon consultant - Base | | | $ 2,500.00 | | | $ 2,500.00 |
| Bryan - Amazon consultant - Commision - estimate | | | $ 1,500.00 | | | $ 1,500.00 |
| Texas Property Taxes | | | | | | $ - |
| AFG - Loan for Forklift | | $ 993.94 | | | | $ 993.94 |
| CA annual tax - GFH Holdings | | | | | | $ - |
| | | | | | | $ - |
| **Loans** | | $ - | $ 1,957.00 | $ 1,649.00 | $ 4,351.00 | $ 7,957.00 |
| Celtic | | | $ 1,957.00 | | | $ 1,957.00 |
| Midwest | | | | | $ 4,351.00 | $ 4,351.00 |
| SBA | | | | $ 1,649.00 | | $ 1,649.00 |
| | | | | | | |
| **Credit cards** | | $ - | $ 850.00 | $ - | $ - | $ 1,850.00 |
| Amex-HB | | | | | | $ - |
| Amex - BB | | | | | | $ - |
| Capital One | | | $ 850.00 | | | $ 850.00 |
| US Bank - DO | | | | | | $ - |
| US Bank - DO | | | | | | $ - |
| US Bank - BCG | | | | | | $ - |
| | | | | | | |
| **Carve Out/Chapter 11 Administrative Costs** | | | | | $ 1,000.00 | $ 1,000.00 |
| Professional Fees for Debtor's Counsel (estimated) | | | | | | |
| Subchapter V Trustee Interim Compensation | | | | | $ 1,000.00 | |
| **Weekly net Impact** | | $ 4,552.00 | $ (1,506.91) | $ (15,019.80) | $ (5,351.00) | $ (17,325.71) |