

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 16, 2024**

*Mark X. Mullin*

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| GRAND FUSION HOUSEWARES, LLC, | § | Case No. 24-41694-mxm11V |
| | § | |
| Debtor. | § | |

### ORDER GRANTING DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE SALE OF THE TRANSFERRED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) GRANTING THE BUYER THE PROTECTIONS AFFORDED TO A GOOD FAITH PURCHASER, AND (C) GRANTING RELATED RELIEF

CAME ON FOR CONSIDERATION the *Motion for Entry of an Order (A) Authorizing the Sale of the Transferred Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Granting the Buyer the Protections Afforded to a Good Faith Purchaser, and (C) Granting Related Relief* (the "Motion") filed by Grand Fusion Housewares, LLC ("Debtor"), the above-captioned debtor and debtor-in-possession. Pursuant to the Motion, the Debtor seeks entry of an order substantially in the form attached thereto as Exhibit A (the "Sale Order") under Sections

105(a), 363(b), 363(f), and 363(m) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002(a)(2), 2002(c)(l), 6004(a), 6004(c), 6004(f), and 6004(h) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"): (i) authorizing the Debtor to sell certain assets (collectively, the "Transferred Assets") to Evriholder Products, LLC and/or its assigns (the "Buyer") free and clear of all liens, claims, Encumbrances, and other interests, pursuant to that certain Intellectual Property Purchase Agreement, substantially in the form attached as **Exhibit 1** to both the Motion and this Sale Order (including all schedules, exhibits, and amendments, the "Purchase Agreement")[1]; (ii) granting the Buyer the protections afforded to a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code (as defined below); and (iii) granting related relief. The Court, having considered the Motion, the evidence presented, and having heard the statements of counsel in support of the relief requested, finds that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 363; that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that notice of the Motion was sufficient under the circumstances, and that no other or further notice need be provided; that the Transferred Assets (as set forth in both the Motion and Purchase Agreement and **Exhibit 1** attached hereto) are to be conveyed to Buyer; and being satisfied based on the representations made in the Motion that such sale is necessary and in the best interest of the Debtor's estate and its creditors; that no objection or other written response to the Motion has been timely filed by any party; and, after due deliberation and sufficient cause appearing therefore, the Court is of the opinion that the proposed sale of the Transferred Assets from the Debtor to Buyer is a sound exercise of the Debtor's business judgment and should be approved. Accordingly, the Court finds that the Motion is well taken and should be granted.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**THE COURT HEREBY FINDS THAT:[2]**

A.       This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case and proceeding is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

B.       On May 16, 2024 (the "Petition Date"), the Debtor commenced this bankruptcy case by filing a voluntary petition for relief under Chapter 11, Subchapter V of Title 11 of the Bankruptcy Code in this Court. The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to section 1184 of the Bankruptcy Code. Behrooz Vida was appointed as the Subchapter V Trustee. No other trustee, examiner, or official committees have been appointed in this case.

C.       The Purchase Agreement, including the form and total consideration to be realized by the Debtor under the Purchase Agreement, (i) constitutes the highest and best offer received by the Debtor for the Transferred Assets; (ii) constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Transferred Assets; and (iii) is in the best interests of the Debtor, its estate, its creditors and all other parties in interest.

D.       The Debtor's determination that the consideration provided by Buyer under the Purchase Agreement constitutes the highest and best offer for the Transferred Assets is a valid and sound exercise of the Debtor's business judgment.

E.       Consistent with its fiduciary duties, the Debtor has demonstrated good, sufficient and sound business reasons and justifications for entering into the transaction and the performance of its obligations under the Purchase Agreement, including, but not limited to, the fact that (the consideration provided by Buyer under the Purchase Agreement will provide a greater recovery for

---

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

the Debtor's estate than would be provided by any other available alternative, including a separate liquidation of the Transferred Assets.

F.     Subject to entry of this Order, the Debtor (i) has full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, (ii) has all of the necessary corporate power and authority to consummate the transactions contemplated by the Purchase Agreement and the ancillary agreements, (iii) has taken all corporate action necessary to authorize and approve the Purchase Agreement and the ancillary agreements and the consummation by the Debtor of the transactions contemplated thereby, and (iv) subject to entry of this Order, needs no consents or approvals, other than those expressly set forth in the Purchase Agreement, the ancillary agreements or this Order, to consummate the transactions contemplated thereby.

G.     The sales process engaged in by the Debtor and Buyer, and the negotiation of the Purchase Agreement, was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest. Neither the Debtor nor Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

H.     Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to the full protection of that provision with respect to the sale, each term of the Purchase Agreement and ancillary agreements and each term of this Order, and otherwise has proceeded in good faith in all respects. The protections afforded by section 363(m) of the Bankruptcy Code are integral to the transaction and Buyer would not consummate the transaction without the receipt of such protections. Neither the Debtor nor Buyer engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code. The Debtor was free to

deal with any other party interested in buying or selling some or all of the Transferred Assets on behalf of the Debtor's estate. The protections afforded by section 363(m) of the Bankruptcy Code are integral to the transaction and Buyer would not consummate the transaction without such protections.

I.      Neither Buyer nor any of its affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of the Debtor, as that term is defined under section 101(31) of the Bankruptcy Code. No common identity of directors, managers, controlling shareholders, or members exists between the Debtor and Buyer.

J.      The consideration provided by Buyer for the Transferred Assets pursuant to the Purchase Agreement, (i) is fair and reasonable, (ii) is the highest and best offer for the Transferred Assets, (iii) will provide a greater recovery for the Debtor's creditors and estate than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession and the District of Columbia.

K.      The Purchase Agreement was not entered into, and none of the Debtor or Buyer has entered into the Purchase Agreement or proposes to consummate the Transaction, for the purpose of (i) escaping liability for any of the Debtor's debts or (ii) hindering, delaying or defrauding the Debtor's present or future creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

L.      The transfer of the Transferred Assets to Buyer will be legal, valid, and effective transfers of the Transferred Assets, and will vest Buyer with all right, title, and interest of the Debtor

to the Transferred Assets free and clear of all claims, liens (including, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights, and Encumbrances.

M.      The Debtor, to the extent permitted by applicable law, may transfer the Transferred Assets free and clear of all claims, other interests of any kind or nature whatsoever ("Interests"), and Encumbrances, including, without limitation, rights or claims based on any successor or Buyer liability, because, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

N.      Neither Buyer nor any of its affiliates are a mere continuation of the Debtor or its estate, there is no continuity or common identity between Buyer, the Debtor, or any of their respective affiliates, and there is no continuity of enterprise between Buyer, the Debtor, or any of their respective affiliates. Neither Buyer nor any of its affiliates are holding themselves out to the public as a continuation of the Debtor. Neither Buyer nor any of its affiliates are a successor to the Debtor or its estate and none of the transactions contemplated by the Purchase Agreement amounts to a consolidation, merger, or de facto merger of Buyer or any of its affiliates with or into the Debtor.

O.      To maximize the value of the Transferred Assets, it is essential that the Transaction contemplated by the Purchase Agreement occur within the time constraints set forth in the Purchase Agreement. Time is of the essence in consummating the transaction. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:**

1.      The Motion is **GRANTED** and **APPROVED** in all respects as set forth herein.

2.      All objections to the Motion, if any, or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice, or the subject matter of such objections have been otherwise satisfied or adequately provided for.

3.      The Debtor is hereby authorized to sell the Transferred Assets to Buyer on the terms set forth in the Purchase Agreement pursuant to section 363(b) of the Bankruptcy Code and to transfer and assign all right, title, and interest (including common law rights) to all property, licenses, and rights to be conveyed in accordance with and subject to the terms and conditions of the Purchase Agreement and this Sale Order, and is further authorized and directed to execute and deliver, and is empowered to perform under, consummate, and implement, the Purchase Agreement and Transaction Documents, together with all additional instruments and documents that may be reasonably necessary or appropriate to implement the Purchase Agreement, including, without limitation, the related documents, exhibits, and schedules, and, subject to the Purchase Agreement and this Sale Order, to take all further actions as may be necessary or desirable to implement the Purchase Agreement and Sale, including for the purposes of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession, he Transferred Assets, or as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Purchase Agreement.

4.      The Purchase Agreement, including any amendments, supplements, ancillary documents, and any modifications thereto, and all of the terms and conditions therein, is hereby approved.

5.	The sale of the Transferred Assets to Buyer shall be and is free and clear of all liens, claims[3], Encumbrances, and other interests of any kind or nature whatsoever pursuant to 11 U.S.C. § 363(f), with all such liens, claims, Encumbrances, and other interests to attach to the proceeds of the sale of the respective Transferred Asset in the same force and validity as existing on such Transferred Assets as of the Petition Date, provided, however, that the Debtor retains and preserves any and all claims and defenses to all such liens, claims, Encumbrances, and other interests. All persons and entities holding liens, claims, Encumbrances, and other interests of any kind or nature whatsoever against or in the Transferred Assets or the Debtor (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, or senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Debtor's estate, the Transferred Assets, or the transactions contemplated by the Purchase Agreement and sale, are forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing against the Buyer, its respective successors, assigns, and affiliates, their respective property or the Transferred Assets, such persons' or entities' liens, claims, Encumbrances, or other interests. No holder of an Encumbrance against or in the Debtor shall interfere with the Buyer's title to, or use and enjoyment of, the Transferred Assets.

6.	Subject to the terms and conditions of this Sale Order, the transfer of the Transferred Assets to the Buyer constitutes a legal, valid, binding and effective transfer of the Transferred Assets and shall vest the Buyer with all right, title, and interest of the Debtor and its estate in and to the Transferred Assets free and clear of all liens, claims, Encumbrances, and other interests of any kind or nature whatsoever.

---

[3] For purposes of this Sale Order, the lowercase term "claim(s)" shall have the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code.

7.    The Buyer is not a "successor" to the Debtor or its estate by reason of any theory of law or equity, and the Buyer shall not assume, or be deemed to assume, or in any way be responsible for, any liability or obligation of the Debtor and/or its estate with respect to the Transferred Assets or otherwise. Neither the purchase of the Transferred Assets by the Buyer nor the fact that the Buyer is using any of the Transferred Assets previously owned by the Debtor will cause the Buyer to be deemed a successor in any respect to the Debtor's business or incur any liability derived therefrom.

8.    The transfer, conveyance and sale of the Transferred Assets to Buyer under the Purchase Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions, including, without limitation, the laws of each jurisdiction in which the Transferred Assets are located, and the sale of the Transferred Assets to Buyer may not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

9.    The sale of the Transferred Assets to Buyer was negotiated with the Debtor at arm's length and in good faith, and the Buyer is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code as a good faith purchaser of the Transferred Assets. Accordingly, the reversal or modification on appeal of this Sale Order shall not affect the validity of the sale as to the Buyer, except to the extent such authorization is duly stayed pending such appeal prior to such consummation, and neither the Debtor nor any successor in interest to the Debtor's estate shall be entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to Section 363(n) of the Bankruptcy Code.

10.     The Debtor has (a) demonstrated that entry into and consummation of the sale constitutes an exercise by the Debtor of sound business judgment, and such acts are in the best interests of the Debtor and the Debtor's estate, its creditors, and all parties in interest; and (b) articulated good and sufficient business reasons justifying the sale of the Transferred Assets to the Buyer.

11.     This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transaction contemplated by the Purchase Agreement.

12.     The Debtor and Buyer, including their respective officers, employees, and agents, are each authorized to execute any and all documents necessary and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Purchase Agreement and this Sale Order to effectuate the sale and purchase of the Transferred Assets without further approval or Order of the Court.  Without limiting the generality of the foregoing, this Sale Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust, intellectual property, licensing and other laws of applicable governmental units with respect to the implementation and consummation of the Purchase Agreement and this Sale Order and the transactions contemplated thereby and hereby.

13.     The Debtor and Buyer are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

14.     The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

15.     The failure to specifically include any particular provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

16.     Nothing contained in any order entered in this Chapter 11 case subsequent to entry of this Sale Order shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Sale Order.  The provisions of this Sale Order are non-severable and mutually dependent.

17.     To the extent applicable, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted or otherwise modified with respect to the Debtor to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Debtor any notice provided for in the Purchase Agreement and (b) to allow the Buyer to take any and all actions permitted by the Purchase Agreement.

18.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rules 6004(h) and/or 6006(d), this Order shall be immediately effective and enforceable upon its entry, and any 14-day stay otherwise in effect is expressly waived and shall not apply.

19.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale transaction, and any party that has, or asserts, possession, control or other rights with respect to any of the Transferred Assets.

### ### END OF ORDER ###

Respectfully submitted by:

Bryan C. Assink
Texas State Bar No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: bryan.assink@bondsellis.com

**COUNSEL FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

# EXHIBIT 1 – PURCHASE AGREEMENT

## INTELLECTUAL PROPERTY PURCHASE AGREEMENT

This Intellectual Property Purchase Agreement (this "***Agreement***") is made as of August 20, 2024, by and between Grand Fusion Housewares, LLC, a Texas limited liability company, having a place of business at 1215 W. Crosby Rd. Ste. 100, Carrollton, TX, (the "***Assignor***") and Evriholder Products, LLC, an Indiana limited liability company (the "***Assignee***") having a place of business at 975 W. Imperial Highway, Brea, CA 92821. Assignor and Assignee are each referred to individually as a "***Party***" and collectively as the "***Parties***."

## RECITALS

WHEREAS, Assignor is engaged in the business of producing, marketing and selling household products (the "***Business***") and owns certain intellectual property rights in a product known as *Pet Hair Remover Dryer Balls* which is identified in Schedule 2 hereto (the "***Product***").

WHEREAS, Assignee also engages in the same Business and desires to purchase the intellectual property assets of Assignor related to the Product at a market price.

WHEREAS, on May 16, 2024 (the "***Petition Date***"), Assignor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Northern District of Texas, as Case No. 24-41694-mxm11 (the "***Bankruptcy Court***" or the "***Bankruptcy Case***," as applicable). The Assignor is operating its Business and managing its property under the jurisdiction of the Bankruptcy Court as debtor in possession.

WHEREAS, subject to approval of the Bankruptcy Court, Assignor and Assignee desire to enter into this Agreement whereby Assignor agrees to sell and assign to Assignee, and Assignee agrees to purchase and receive from Assignor, the Transferred Assets, on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the premises, mutual covenants and promises hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1. **DEFINITIONS**

    1.1     Certain Definitions. For purposes of this Agreement, the following terms shall have the meanings specified or referred to in this Section 1.1:

        (a)     "***Affiliate***" means, with respect to any Person, any other Person that, directly or indirectly, controls, is controlled by, or is under common control with the first Person.

        (b)     "***Contracts***" means all agreements, contracts, commitments, options, orders, licenses, leases, obligations and other instruments, arrangements and understandings (whether written or oral) to which a Person is a party, or by which any of its assets or properties are bound, whether express or implied.

(c)     "***Effective Date***" means February 1, 2024.

(d)     "***Encumbrance***" means any mortgage, pledge, charge, claim, equitable interest, lien, security interest, transfer, receipt of income or other encumbrance or restriction of any kind or exercise of any other attribute of ownership that is imposed by agreement, understanding, applicable law or otherwise, whether of record or otherwise.

(e)     "***Intellectual Property***" means any and all of the following in any jurisdiction throughout the world, including: (i) patents, patent applications, patent disclosures and inventions (whether or not reduced to practice); (ii) trademarks, service marks, trade dress, trade names, corporate names, logos and slogans (and all translations, adaptations, derivations and combinations of the foregoing) together with all goodwill associated with each of the foregoing; (iii) copyrights and copyrightable works; (iv) confidential information, proprietary information and trade secrets, including know-how, ideas, source code, object code, inventions, designs, technology, tools, methods, processes, specifications, technical data, databases, data collections, research and development, customer lists, supplier lists, pricing and cost information and business and marketing plans and proposals; (v) rights of privacy and publicity, and moral and economic rights of authors and inventors, however denominated; (vi) registrations and applications for registration, together with all reissuances, continuations, continuations-in-part, revisions, extensions, reexaminations and renewals for any of the foregoing; (vii) other similar proprietary and intangible rights; (viii) all causes of action (resulting from past, current and future infringement thereof), damages, and remedies relating to any and all of the foregoing; and (ix) all copies and tangible embodiments of the foregoing.

(f)     "***Liability***" or "***Liabilities***" means, with respect to any Person, any liability, whether known or unknown; whether asserted or unasserted; whether absolute or contingent; whether accrued or unaccrued; whether disputed or undisputed; whether liquidated or unliquidated; whether secured or unsecured; whether joint or several; whether due or to become due; whether vested or unvested; whether executory, determined, determinable or otherwise; and whether or not the same is required to be accrued on the financial statements of such Person.

(g)     "***Licensed Assets***" means the trademarks of Assignor identified on Schedule 3, whether registered or not and all related or confusingly similar trademarks owned or used by Assignor.

(h)     "***Net Collected Sales***" means the actual revenue received by Assignee from customers for the sales of Products, excluding, however, (i) any federal, state and local excise, sales, use, value-added or other taxes collected directly from customers as part of or as an addition to the sales price of the Products; and (ii) any amounts refunded or returned by Assignee to customers, whether in connection with discounts, allowances, refunds or otherwise.

(i)     "***Order***" means any award, decision, injunction, judgment order, ruling, subpoena, or verdict entered, issued, made, or rendered by any court, administrative agency, or other governmental body or by any arbitrator.

(j)  "***Person***" means (and includes) any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, association or trust; any other unincorporated organization or entity; or any governmental body or any department or agency thereto.

(k)  "***Proceeding***" means any action, claim, demand, suit, proceeding, arbitration, grievance, citation, summons, subpoena, inquiry or investigation, civil, criminal, regulatory or otherwise, in law or in equity.

(l)  "***Sale Order***" means an Order of the Bankruptcy Court, consistent with the terms of Section 6.1, in form and substance acceptable to Assignee in its reasonable discretion, among other things, (a) approving (i) this Agreement and the execution, delivery, and performance by Assignor of this Agreement and the other instruments and agreements contemplated hereby and (ii) the sale and assignment of the Transferred Assets to Assignee free and clear of all Encumbrances; (b) determining that Assignee is a good faith purchaser; and (c) providing that (i) the Closing will occur in accordance with the terms and conditions hereof; and (ii) Assignee will not have any derivative, successor, transferee or vicarious liability for Liabilities of Assignor or any Affiliates of Assignor by reason of any theory of law or equity (whether under federal or state Law or otherwise) as a result of the transactions contemplated by this Agreement or in any way relating to the Product or the Transferred Assets prior to the Closing.

(m)  "***Transaction Documents***" means this Agreement, the Patent Assignment and all other Contracts, instruments and certificates contemplated hereunder to be delivered by any Party hereto at or prior to the Closing, including without limitation, each of the schedules and exhibits to this Agreement.

(n)  "***Transferred Assets***" means all of the Intellectual Property of Assignor used in or otherwise associated with the Product other than the Licensed Assets, including, but not limited to, those assets identified in Schedule 1 attached hereto and incorporated herein by reference and all of the following rights throughout the world:  (i) the rights to make, use, import, offer to sell and sell the Product throughout the world, including all rights to Chinese Patent No. CN213086377U (the "***Patent***") as further described on Schedule 1 as well as any related patents or patent applications and any other patents or patent applications covering the Product or its use or manufacture; (ii) all know-how and trade secrets intrinsic or related or appurtenant to the Product; (iii) all rights in the copyright works related to the Product, including, but not limited to, the packaging and product design identified on Schedule 1 or shown in Schedule 2, whether registered or not (the "***Copyrights***"); (iv) all of the trademarks used in connection with the Products, including, but not limited to, those identified on Schedule 1 or shown in Schedule 2, other than the Licensed Assets, whether registered or not and the goodwill associated therewith and all related or confusingly similar trademarks owned or used by Assignor (collectively, the "***Trademarks***"); and (v) any rights Assignor may have in all tangible materials relating to manufacturing the Product, including, but not limited to, all tooling, molds, artwork, prototypes and the like.

(o)  "***Transitioned Customer***" means a Person that, as of the Effective Date, had been purchasing Transitioned Products from Assignor who:  (i) is contacted by Assignor in cooperation with Assignee during the Commission Period and, (ii) following such contact,

continues to purchase the Transitioned Products from Assignee during the Commission Period, including without limitation, Dollar General, Popshelf, and Menards.

(p) "***Transitioned Products***" means the products identified on <u>Schedule 4</u> attached hereto.

1.2 <u>Other Defined Terms</u>. Certain other capitalized terms are defined in this Agreement and are used with the meanings so ascribed to them.

## 2. PURCHASE AND SALE

2.1 <u>Transferred Assets</u>. Upon the terms set forth in this Agreement, at the Closing, Assignor shall and hereby does sell, convey, assign, transfer and deliver to Assignee, and Assignee shall and hereby does purchase and acquire from Assignor, all of Assignor's right, title and interest in and to the Transferred Assets free and clear of any Encumbrances.

2.2 <u>Licensed Assets</u>. Upon the terms set forth in this Agreement, at the Closing, Assignor shall and hereby does grant to Assignee, and Assignee shall and hereby does acquire from Assignor, an irrevocable, worldwide right and license to use the Licensed Assets for any and all purposes in connection with the Product for a period of one (1) year following the Effective Date.

2.3 <u>Assumed Liabilities; Retained Liabilities</u>. The transfer of Transferred Assets pursuant to this Agreement shall not include the assumption of any Liability related to such Transferred Assets, with all Liabilities of Assignor remaining with Assignor (the "***Retained Liabilities***"). Notwithstanding anything to the contrary herein, the Retained Liabilities shall mean all Liabilities of Assignor.

2.4 <u>Consideration</u>. The sole and aggregate consideration to be paid by Assignee to Assignor for the Transferred Assets shall be the Royalty and the Sales Commission, each as detailed in <u>Section 3</u> below.

## 3. ROYALTY AND SALES COMMISSION

3.1 <u>Royalty</u>. For a period of three (3) years from the Effective Date of this Agreement (the "***Royalty Period***"), Assignee shall remit to Assignor an amount equal to three percent (3%) of the Net Collected Sales for sales of the Product made by Assignee (the "***Royalty***"). For the avoidance of doubt, no Royalty shall be paid for Net Collected Sales received following the Royalty Period.

3.2 <u>Sales Commission</u>. For a period of one (1) year from the Effective Date (the "***Commission Period***"), Assignee shall remit to Assignor a sales commission of three percent (3%) of Net Collected Sales for sales of the Transitioned Products to Transitioned Customers (the "***Sales Commission***") made during the Commission Period. For the avoidance of doubt, the Sales Commission shall only apply to Net Collected Sales for those Transitioned Products actually sold to Transitioned Customers during the Commission Period and shall be cumulative with the Royalty; no Sales Commissions shall be paid for Net Collected Sales received following the Commission Period.

3.3    <u>Adjustments to Payments</u>. The amount of the payments for the Royalty and Sales Commission (collectively, the "***Payments***") shall be subject to adjustment by the following amounts:

(a)    all Payments shall be subject to any income tax or other withholding required by the laws of any applicable jurisdiction; and

(b)    all damages, losses and expenses suffered or incurred by Assignee, including reasonable attorneys' fees and costs of litigation, arising from or relating to any breach by Assignor of any warranty, representation or covenant contained in this Agreement or in the Patent Assignment made by Assignor.

3.4    <u>Payment</u>. The Payments shall be paid by Assignee to Assignor on a quarterly basis, with Payment sent to Assignor within thirty (30) days following the end of each calendar quarter during the Commission Period and Royalty Period. Any Payments that would otherwise have been due and payable to Assignor for the Royalty and/or Sales Commission prior to Closing shall be paid at Closing on the Closing Date.

4.    **CLOSING**

4.1    <u>Closing</u>. The closing of this Agreement and the transactions contemplated hereby ("***Closing***") shall take place by electronic communications and transmission of PDF documents on a mutually agreeable date within seven (7) days from entry of the Sale Order by the Bankruptcy Court (the "***Closing Date***") to be effective for all purposes as of 12:01 a.m., Pacific time, on the day immediately following the Closing Date.

4.2    <u>Closing Deliverables by Assignor</u>. In addition to any other documents to be delivered under other provisions of this Agreement, Assignor shall deliver to Assignee at Closing the following:

(a)    electronic files related to the Transferred Assets, including, but not limited to, graphics files for the Trademarks and Copyrights;

(b)    a patent assignment, dated as of the Closing Date, attached hereto as <u>Exhibit A</u> (the "***Patent Assignment***"), duly executed by Assignor;

(c)    a certified copy of the entered Sale Order; and

(d)    such other bills of sale, deeds, endorsements, assignments and other good and sufficient instruments of conveyance and transfer, in form reasonably satisfactory to Assignee, as Assignee may reasonably request to vest in Assignee all of Assignor's right, title and interest of Assignor in, to, or under any or all of the Transferred Assets.

4.3    <u>Closing Deliverables by Assignee.</u> In addition to any documents or other items to be delivered under other provisions of this Agreement, Assignee shall deliver to Assignor at Closing the following:

(a)     Any Payments that would otherwise have been due and payable to Assignor for the Royalty and/or Sales Commission prior to Closing.

## 5.     REPRESENTATIONS AND WARRANTIES

5.1     <u>Representations and Warranties by Assignor</u>. Assignor hereby represents and warrants to Assignee as of the Closing Date as follows:

(a)     <u>Organization and Good Standing</u>. Assignor is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of Texas, with full power and authority to conduct its business as it is now conducted.

(b)     <u>Enforceability; Authority; No Conflict</u>. Upon the execution and delivery of this Agreement and each other Transaction Documents executed or delivered by Assignor (collectively, the "***Assignor's Closing Documents***"), assuming due authorization, execution and delivery by each other Party thereto, as applicable, each of Assignor's Closing Documents (assuming due authorization, execution and delivery thereof by Assignee) constitutes the legal, valid and binding obligation of Assignor, enforceable against Assignor in accordance with its terms, except as enforceability may be limited by applicable equitable principles (whether applied in a Proceeding at law or in equity) or by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally. Assignor has the right, power and authority to execute and deliver Assignor's Closing Documents and to perform its obligations thereunder. The execution and delivery by Assignor of the Assignor's Closing Documents to which it is a party, and the consummation by Assignor of the transactions contemplated hereby and thereby, will not constitute (with the giving of notice or the lapse of time or both) a violation of, be in conflict with, result in the acceleration of or entitle any party to accelerate (whether after the giving of notice or lapse of time or both), or constitute a default under (i) any term or provision of the articles of organization or operating agreement of Assignor, as amended; (ii) any Contract or rights of any third Person to which Assignor or its Affiliates is subject or by which it is bound; or (iii) any applicable law.

(c)     <u>Title of Transferred Assets</u>. Assignor has good and valid title to the Transferred Assets and, subject to the terms of this Agreement, the Transferred Assets (together with all rights and permissions necessary to use, offer for sale, sell, import, export and otherwise exploit (collectively, "***Exploitation***") the Transferred Assets) will be transferred to Assignee as of the Closing Date free and clear of all Encumbrances. The Transferred Assets and Assignor's sale thereof to Assignee do not, and the subsequent resale and Exploitation of the Transferred Assets and the Products covered thereby will not, infringe, violate or misappropriate the patent, trademark, copyright, trade secret or other Intellectual Property rights of any Person. Assignor has not received any communication or claims from any Person relating to any of the Transferred Assets, the Products covered thereby or the Exploitation thereof.

5.2     <u>Representations and Warranties by Assignee</u>. Assignee hereby represents and warrants to Assignor as of the Closing Date as follows:

(a)     <u>Organization and Good Standing</u>. Assignee is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of Indiana, with full power and authority to conduct its business as it is now conducted.

(b)     <u>Enforceability; Authority; No Conflict</u>. Upon the execution and delivery of this Agreement and each other Transaction Documents executed or delivered by Assignee (collectively, the "***Assignee's Closing Documents***"), assuming due authorization, execution and delivery by each other Party thereto, as applicable, each of Assignee's Closing Documents (assuming due authorization, execution and delivery thereof by Assignor) constitutes the legal, valid and binding obligation of Assignee, enforceable against Assignee in accordance with its terms, except as enforceability may be limited by applicable equitable principles (whether applied in a Proceeding at law or in equity) or by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally. Assignee has the right, power and authority to execute and deliver Assignee's Closing Documents and to perform its obligations thereunder.

6.     **BANKRUPTCY REQUIREMENTS**

6.1     <u>Sale Order</u>.   Assignor will sell the Transferred Assets pursuant to the Sale Order and this Agreement, free and clear of all Encumbrances.  The Sale Order shall be in form and substance acceptable to Assignee in its reasonable discretion. The Sale Order, among other things, must:

(a)     authorize Assignor to consummate this Agreement;

(b)     provide that such sale of the Transferred Assets pursuant to this Agreement shall, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, vest Assignee with good title to the Transferred Assets free and clear of Encumbrances;

(c)     provide that the sale of the Transferred Assets pursuant to this Agreement does not and will not subject Assignee or any Affiliate thereof to any pre-Closing Liability by reason of such transfer under the laws of the United States, any State, territory or possession thereof or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law, including, without limitation, any theory of successor or transferee Liability;

(d)     include a finding that the Royalty and the Sales Commission to be paid by Assignee constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code or under the laws of the United States, any State, territory, possession, or the District of Columbia;

(e)     include a finding that Assignee is a good-faith purchaser pursuant to section 363(m) of the Bankruptcy Code;

(f)     provide that the Bankruptcy Court retains jurisdiction to enforce the provisions of this Agreement in all respects, including retaining jurisdiction to protect Assignee against any Liabilities or otherwise in accordance with the provisions of the Agreement;

(g)     provide that the provisions of the Sale Order are nonseverable and mutually dependent; and

(h)     provide that the approval of the sale of the Transferred Assets shall be effective immediately pursuant to Bankruptcy Rules 6004(b) and 6006(d).

6.2     <u>Cooperation</u>.  Subject to the other provisions hereof, Assignor shall use its commercially reasonable efforts to perform its obligations hereunder and to take, or cause to be taken, and do, or cause to be done, all things necessary, proper or advisable under applicable law to obtain the entry of the Sale Order and cause the transactions contemplated herein to be effected as soon as practicable, in accordance with the terms hereof.  Each Party shall cooperate in a commercially reasonable manner with each other Party and its representatives in connection with any step required to be taken as a part of its obligations hereunder.

## 7.     GENERAL PROVISIONS

7.1     <u>Post-Closing Obligations; Turnover</u>. Assignor shall, from time to time after the Closing, deliver to Assignee such further deeds, bills of sale and assignment, documents of title and other instruments necessary or desirable, in the reasonable opinion of Assignee and its counsel, to perfect the transfers of the Transferred Assets to Assignee or enable Assignee to enforce or cause Exploitation of the Transferred Assets. Assignor shall take such further actions as may be reasonably necessary to cancel, rescind and/or repudiate any and all customer orders arising out of or related to the Transferred Assets and to work to transition such customer order to Assignee on terms acceptable to Assignee. If, on or after the date hereof, Assignor receives any cash or other payments in respect of the Transferred Assets, Assignor shall make best efforts to pay any such amounts to Assignee promptly after the receipt thereof.

7.2     <u>Expenses</u>. Except as otherwise provided in this Agreement, each Party will bear its respective fees and expenses incurred in connection with the preparation, negotiation, execution and performance of this Agreement and the transactions contemplated herein, including all fees and expenses of its professionals and other representatives. Should any Party institute any action or Proceeding in court or otherwise to enforce or interpret this Agreement by reason of or with respect to an alleged breach of any provision hereof, the substantially prevailing party shall be entitled to receive from the non-prevailing party such amount as the court may judge by final order to be reasonable attorneys' and paralegals' fees for the services rendered to the substantially prevailing party in such action or Proceeding, plus the substantially prevailing party's costs and expenses related thereto.

7.3     <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

7.4     <u>No Waiver</u>. The waiver by any Party of a breach of any covenant, agreement or undertaking contained herein shall be made only by a written waiver in each case, and no such waiver shall operate or be construed as a waiver of any prior or subsequent breach of the same covenant, agreement or undertaking. Except as otherwise specifically provided herein, the exercise of any remedy provided by law or otherwise, and the provisions of this Agreement for any remedy, shall not exclude any other remedy.

7.5     <u>Severability</u>. If any provision of this Agreement shall be held invalid, illegal or unenforceable, in whole or in part, the validity, legality and enforceability of the remaining part of

such provision, and the validity, legality and enforceability of the other provisions hereof, shall not be affected thereby. Any provision of this Agreement that is held invalid, illegal or unenforceable in any jurisdiction shall not be deemed invalid, illegal or unenforceable in any other jurisdiction.

7.6     Entire Agreement; Amendment. This Agreement, together with the other Transaction Documents and all exhibits and schedules thereto and hereto, constitutes the entire agreement between the Parties pertaining to the transactions contemplated hereby and thereby, and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the Parties, it being the intention of the Parties that in the event of any subsequent litigation, controversy or dispute concerning the terms and provisions of this Agreement, no Party shall be permitted to offer to introduce oral or extrinsic evidence concerning the terms and conditions hereof that are not included or referred to herein and not reflected in writing. No conditions of any kind or nature exist to the legal effectiveness of this Agreement which shall be in full force and effect immediately upon execution and delivery by the Parties hereto. Except as otherwise provided herein, no supplement to, or modification of, this Agreement shall be binding unless executed in writing by each of the Parties.

7.7     Governing Law; Waiver of Jury Trial. This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware. If for any reason any provision or provisions hereof are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid. EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTION CONTEMPLATED HEREBY.

7.8     Assignability. Assignor may not assign its rights or obligations hereunder without the consent of Assignee. Assignee may assign all or a portion of its rights and obligations under this Agreement (i) to any of its subsidiaries or Affiliates or (ii) to any other Person who also acquires Assignee's rights in and to the Transferred Assets.

7.9     Notices. All notices, consents, waivers and other communications under this Agreement must be in writing and will be deemed to have been duly given when (a) delivered by hand (with written confirmation of receipt), (b) sent by email with written confirmation of receipt or, (c) when delivered to the addressee, if sent by a nationally recognized overnight courier service (receipt requested), in each case to the appropriate addresses and email addresses set forth below, or to such other addresses and email addresses as a Party may designate from time to time by notice to the other Party:

<div style="margin-left:2em">

Assignee:            EVRIHOLDER PRODUCTS, LLC
975 W. Imperial Highway
Brea, California 92821
Attn:   Ivan Stein
Email: IvanS@evriholder.com

</div>

with a copy (which shall not constitute notice) to:

> Vedder Price P.C.
> 222 North LaSalle Street
> Chicago, Illinois 60601
> Attn: Michael A. Nemeroff
>       David L. Kane
> Email: mnemeroff@vedderprice.com
>        dkane@vedderprice.com

Assignor:      GRAND FUSION HOUSEWARES, LLC
> 5636 Montreaux Drive
> Frisco, Texas 75034
> Attn: Brendan Bauer
> Email: brendan@grandfusionhousewares.com

with a copy (which shall not constitute notice) to:

> Bonds Ellis Eppich Schafer Jones LLP
> 420 Throckmorton St., Suite 1000
> Fort Worth, Texas 76102
> Attn: Bryan C. Assink
> Email: bryan.assink@bondsellis.com

7.10    Counterparts; Effective Date; PDF Copies. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall be deemed to be a single instrument, and shall be effective as of the date when one or more counterparts have been signed by each of the Parties and delivered to the other Parties. This Agreement may be executed and delivered by .pdf, .tif, .gif, .jpeg or similar attachment to electronic mail (including any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., DocuSign or Dropbox Sign), each of which shall be deemed an original and shall be treated in all manner and respect as an original executed counterpart and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in Person.

7.11    No Third-Party Beneficiaries. Except as stated herein, this Agreement shall not confer any rights or remedies upon any Person other than Assignee, Assignor and their respective successors and permitted assigns.

7.12    Interpretation; Construction; Headings. The Parties acknowledge and agree that (a) each Party and its counsel reviewed and negotiated the terms and provisions of this Agreement and the other Transaction Documents and have contributed to their revision and (b) the rule of construction to the effect that any ambiguities are resolved against the drafting Party shall not be employed in the interpretation of this Agreement and the other Transaction Documents. The words "include," "includes," "included," "including" and "such as" do not limit the preceding words or terms and shall be deemed to be followed by the words "without limitation." All pronouns and any variations thereof refer to the masculine, feminine or neuter, singular or plural, as the context may

require. All terms defined in this Agreement in their singular or plural forms have correlative meanings when used herein in their plural or singular forms, respectively. All references to "Section" or "Sections" refer to the corresponding Section or Sections of this Agreement. The article and section headings contained in this Agreement are solely for the purpose of reference, are not part of the agreement of the Parties and shall not in any way affect the meaning or interpretation of this Agreement.

[*Signature page follows*]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

ASSIGNOR:

GRAND FUSION HOUSEWARES, LLC

By: *Brendan Bauer*
Brendan Bauer (Aug 20, 2024 18:19 CDT)
Name: Brendan Bauer
Title: President

ASSIGNEE:

EVRIHOLDER PRODUCTS, LLC

By: _____
Name: Ivan Stein
Title: President and CEO

<u>SCHEDULE 1</u>

<u>TRANSFERRED ASSETS</u>

<u>Patents</u>:

- Chinese Patent No. CN213086377U, issued April 30, 2021 and titled (translated) CLEANING BALL FOR CLEANING CLOTHES FIBER OR HAIR

<u>Trademarks</u>:

- Pet Hair Remover Dryer Balls

<u>Copyrights</u>:

- All works of authorship created and used in connection with the manufacture and sale of the Product, including all images, art, drawings, photos, CAD renderings, models, descriptions, writings, packaging designs, and other copyrightable aspects of the Product, including those shown in <u>Schedule 2</u>

SCHEDULE 2

EXEMPLARY DESCRIPTION OF THE PRODUCT

Product Name: Pet Hair Remover Dryer Balls



**GENTLE ON CLOTHING**
**LEAVING CLOTHES SOFTER AND LOOKING CLEANER**



Reusable soft foam balls



Use 2-3 balls for small dryer loads and 4-5 balls for large loads.



Only for Laundry (dryer)



**SAY GOODBYE**
TO PET HAIR STUCK ON CLEAN LAUNDRY





Picks animal sheds and fur while drying and keeps clothes new

Use a unique friction formula to to knock pet hair and lint

**NO MORE
ENDLESS LINT
ROLLING**

We love our pets but hate unsightly animal hair on every article. This is the easiest way to keep your outfits free of your four legged friends' shedded coat and dander





Easy to use



Unique Friction Formula



Knocks off pet hair and lint



Gentle on Delicate Clothing

SCHEDULE 3

LICENSED ASSETS

<u>Trademarks:</u>

- GRAND FUSION



- 



-

TRANSITIONED PRODUCTS

| Product Number | Product Description |
| --- | --- |
| 4527WCL0112 | Pet Hair Rmvr Wsher Balls |
| GF01OS0106 | GF Wool Dryer Balls 3PK |
| GF01OS0672 | GF Wool Dryer Balls 3PK |
| GF01OS1272 | GF Wool Dryer Ball 3 pk |
| GF02OS0106 | GF Pet Hair Dryer Balls 3PK |
| GF02OS0672 | GF Pet Hair Dryer Balls 3PK |
| GF03OS1272 | GF Frapp-Wrap Aqua |
| GF04OS0636 | GF Fruit Frsh Crisper Drawer L |
| GF05OS0648 | GF Corner Sink Drying Rack |
| GF08OS0672 | GF Roll Up Sink Drying Rack |
| GF10OS1296 | GF Natural Dish Scrubber 1pk |
| GF11OS1272 | GF Kitchen Gloves 1PK Pink |
| GF13OS0372 | GF Pet Hair Rmovr Dryer Ball 2 |
| GF17OS1272 | GF Frapp Wrap Pink Medium |
| GF18OS1296 | GF Hvy Duty Natural Dish Scrub |
| GF19OS1248 | GF Folding Bamboo Sponge 2 PK |
| GF20ICM1272 | GF Rnd LED Pet Collar Pndnt Bl |
| GF22OS0672 | GF Air Purifying Bag 200G |
| GF23OS0672 | GF Self Cleaning Lint Brush |

PATENT ASSIGNMENT

See attached.

# 转 让 证 书

转让人, _____兹将其在中国提交的第**202021764593.6**号专利申请，在中华人民共和国的全部利益转让给 <u>美国艾瑞郝德制品有限公司</u> 。

受让人(签名者)，兹接受转让人的转让，并无限制地接受由此而产生的一切权利和义务。

转让人（法人代表）              受让人（法人代表）

_____       美国艾瑞郝德制品有限公司

地址：<u>美国加州帕垂治湾尔12号</u>      地址：美国

**<u>*The above blanks are to be filled out in Chinese by the Chinese patent agent*</u>**

## ASSIGNMENT

We, the Assignor, <u>Grand Fusion Housewares, LLC</u> hereby assign our share of right in Chinese patent application No. <u>202021764593.6</u> to <u>Evriholder Products, LLC</u> *(Address: 975 W. Imperial Highway, Brea, California 92821, USA)*.

We, the assignee, hereby accept the assignment from the assignor undersigned, without any restrictions and with all rights and obligations derived therefrom.

**By Assignor (signature)**

_____ **Date**

Grand Fusion Housewares, LLC

**By Assignee (signature)**

_____ **Date**

Evriholder Products, LLC