**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| GRAND FUSION HOUSEWARES, LLC, | § | |
| | § | Case No. 24-41694 |
| Debtor. | § | |
| | § | |

**MODIFIED FIRST AMENDED CHAPTER 11 PLAN OF**
**REORGANIZATION OF GRAND FUSION HOUSEWARES, LLC**


Bryan C. Assink
Texas State Bar No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, TX 76102
Email: bryan.assink@bondsellis.com

**COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION**

Dated: December 17, 2024

# TABLE OF CONTENTS

**Article I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ...................................................................................1

  A.     Defined Terms. ..........................................................................................1

  B.     Rules of Interpretation. ..............................................................................8

  C.     Computation of Time. ................................................................................9

  D.     Governing Law. .........................................................................................9

  E.     Controlling Document. ...............................................................................9

  F.     Background. .............................................................................................10

      1.     Overview and History of the Debtor and Events Leading to this Chapter 11 Case. .................................................................................10

      2.     Feasibility and Projected Disposable Income. ...........................................10

      3.     The Liquidation Analysis. ..................................................................11

**Article II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS** ...................................11

  A.     Administrative Claims. .............................................................................11

  B.     Professional Fee Claims. ...........................................................................12

  C.     Priority Tax Claims. .................................................................................12

**Article III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** .....13

  A.     Classification of Claims and Interests. ........................................................13

  B.     Treatment of Claims and Interests. .............................................................13

      1.     Class 1 - Other Priority Claims .............................................................13

      2.     Class 2 – Secured Tax Claims ...............................................................14

      3.     Class 3 – Other Secured Claims.............................................................14

      4.     Class 4 – Midwest Secured Claim ..........................................................15

      5.     Class 5 – Celtic Secured Claim..............................................................15

      6.     Class 6 – SBA Secured Claim ...............................................................15

      7.     Class 7 - General Unsecured Claims .......................................................16

8.      Class 8 - Interests in the Debtor ..............................................16

C.    Special Provision Governing Unimpaired Claims. .................................16

**Article IV. MEANS FOR IMPLEMENTATION OF THE PLAN .........................16**

A.    General Settlement of Claims and Interests. .......................................16

B.    Restructuring Transactions. ..........................................................17

C.    Reorganized Debtor. ...................................................................17

D.    Sources and Uses of Consideration for Plan Distributions. ....................17

E.    Corporate Existence. ...................................................................17

F.    Vesting of Assets in the Reorganized Debtor. ....................................18

G.    Cancellation of Existing Securities and Agreements. ...........................18

H.    Corporate Action. ......................................................................18

I.    Organizational Documents. ...........................................................19

J.    Directors and Officers of the Reorganized Debtor. ..............................19

K.    Effectuating Documents; Further Transactions. .................................19

L.    Section 1146 Exemption. ..............................................................20

M.    Preservation of Causes of Action. ..................................................20

**Article V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
**...................................................................................................21**

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. .........21

B.    Pass-Through .............................................................................21

C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases. ...........21

D.    Preexisting Obligations to the Debtor under Executory Contracts and Unexpired
      Leases. ....................................................................................22

E.    Insurance Policies. .....................................................................22

F.    Reservation of Rights. .................................................................22

G.    Nonoccurrence of Effective Date. ....................................................23

**Article VI. PROVISIONS GOVERNING DISTRIBUTIONS** ................................................**23**

    A.    Timing and Calculation of Amounts to Be Distributed. .......................................23

    B.    Disbursing Agent. ..............................................................................................23

    C.    Rights and Powers of Disbursing Agent. ............................................................24

    D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions. ...........24

    E.    Manner of Payment. ...........................................................................................25

    F.    Compliance with Tax Requirements. ..................................................................25

    G.    Allocations. ........................................................................................................25

    H.    No Postpetition Interest on Claims. ....................................................................25

    I.    Setoffs and Recoupment. ...................................................................................25

    J.    Claims Paid or Payable by Third Parties. ...........................................................26

**Article VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
DISPUTED CLAIMS** .................................................................................................**26**

    A.    Allowance of Claims. .........................................................................................26

    B.    Claims Administration Responsibilities. .............................................................27

    C.    Disputed Claims Process. ...................................................................................27

    D.    Estimation of Claims and Interests. ....................................................................27

    E.    Adjustment to Claims or Interests without Objection. .........................................27

    F.    Time to File Objections to Claims. .....................................................................28

    G.    Disallowance of Claims or Interests. ..................................................................28

    H.    Amendments to Claims or Interests. ...................................................................28

    I.    No Distributions Pending Allowance. .................................................................28

    J.    Distributions After Allowance. ..........................................................................29

    K.    Rights under Section 505. ..................................................................................29

**Article VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**
................................................................................................................................**29**

    A.    Discharge of Claims. ..........................................................................................29

1.    Consensual Plan - Discharge Under Bankruptcy Code section 1141(d). ..29

2.    Non-Consensual – Discharge Under Section 1192....................................30

**B.    Release of Liens.**........................................................................................31

**C.    Releases by the Debtor.**.............................................................................31

**D.    Exculpation.**..............................................................................................32

**E.    Injunction.**.................................................................................................32

F.    Protections Against Discriminatory Treatment. ....................................33

G.    Document Retention. ..................................................................................33

H.    Reimbursement or Contribution. ..............................................................33

**Article IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN**...................................................................................................**34**

A.    Conditions Precedent to the Effective Date. ............................................34

B.    Waiver of Conditions. .................................................................................34

C.    Effect of Failure of Conditions. ................................................................34

**Article X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**.......**35**

A.    Modification and Amendments....................................................................35

B.    Revocation or Withdrawal of Plan. ...........................................................35

**Article XI. RETENTION OF JURISDICTION**.........................................................**35**

**Article XII. MISCELLANEOUS PROVISIONS**.......................................................**37**

A.    Immediate Binding Effect...........................................................................37

B.    Additional Documents. ...............................................................................37

C.    Reservation of Rights..................................................................................37

D.    Successors and Assigns...............................................................................38

E.    Term of Injunctions or Stays......................................................................38

F.    Entire Agreement. .......................................................................................38

G.    Exhibits. ......................................................................................................38

H.    Nonseverability of Plan Provisions...........................................................................38

I.    Default.............................................................................................................................39

J.    Closing of Chapter 11 Case. ......................................................................................39

K.    Waiver or Estoppel. ....................................................................................................40

L.    Conflicts..........................................................................................................................40

## INTRODUCTION

The Debtor proposes this Chapter 11 Plan of Reorganization for the resolution of the outstanding claims against and interests in the Debtor pursuant to chapter 11 of the Bankruptcy Code.  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in <u>Article I.A</u> hereof.  The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO READ THE PLAN AND THE EXHIBITS TO THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

### Article I.
### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

*A.    Defined Terms.*

As used in this Plan and unless defined elsewhere in the Plan, capitalized terms have the meanings set forth below.

1.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estate under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate and operating the businesses of the Debtor; (b) Allowed Professional Fee Claims in the Chapter 11 Case; and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

2.    "*Administrative Claim Bar Date*" means the deadline for filing requests for payment of Administrative Claims, which shall be 30 days after the Effective Date.

3.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

4.    "*Allowed*" means, with respect to any Claim, except as otherwise *provided* in the Plan:  (a) a Claim that is evidenced by a Proof of Claim Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed by any party in interest within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party

or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.  For the avoidance of doubt: (x) a Proof of Claim Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtor may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. "Allow" and "Allowing" shall have correlative meanings.

5.      "*Avoidance Actions*" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

6.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

7.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

8.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the general, local, and chambers rules of the Bankruptcy Court.

9.      "*Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding the holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

10.      "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

11.      "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

12.      "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

13.    "*Celtic*" means Celtic Bank Corporation.

14.    "*Celtic Cure Payment*" means payment in an amount necessary to cure all existing defaults under the Celtic Loan.

15.    "*Celtic Loan*" means the loan evidenced by that certain Promissory Note entered into by the Debtor, as borrower, and Celtic, as lender, in the original principal amount of $150,000, dated January 28, 2020.

16.    "*Celtic Secured Claim*" means the Secured Claim of Celtic as provided in Proof of Claim Number 11 filed in the Chapter 11 Case by Celtic against the Debtor in the amount of $98,117.36.

17.    "*Chapter 11 Case*" means the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

18.    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against  the Debtor.

19.    "*Claims Register*" means the official register of Claims maintained by the Court.

20.    "*Class*" means a class of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

21.    "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified in Article IX.A of the Plan having been (a) satisfied or (b) waived pursuant to Article IX.B of the Plan.

22.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

23.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on confirmation of the Plan, pursuant to sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

24.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

25.    "*Consummation*" means the occurrence of the Effective Date.

26.    "*Cure Claim*" means a Claim based upon the Debtor's defaults on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to section 365 of the Bankruptcy Code.

27.    "*Debtor*" means Grand Fusion Housewares, LLC, including all predecessor entities and any and all other names under which it has done business, including Grand Fusion Housewares, Inc.

28.    "*Disbursing Agent*" means the Reorganized Debtor, or the Entity or Entities selected by the Reorganized Debtor to make or facilitate distributions pursuant to the Plan to all other parties.

29.    "*Disposable Income*" has the meaning ascribed to such term in section 1191(d) of the Bankruptcy Code.

30.    "*Disputed Claim*" or "*Disputed Interest*" means any Claim or Interest that the Debtor or Reorganized Debtor believe is unliquidated, disputed, or contingent and which has not been Allowed by Final Order of a court of competent jurisdiction or by agreement with the Debtor or Reorganized Debtor.

31.    "*Distribution Record Date*" means the record date for purposes of making Plan Distributions on account of Allowed Claims, which date shall be the later of (i) the Confirmation Date; and (ii) the Bar Date.

32.    "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect, (b) all conditions precedent to the occurrence of the Effective Date set forth in <u>Article IX.A</u> of the Plan have been satisfied or waived in accordance with <u>Article IX.B</u> of the Plan, and (c) the Debtor declare the Plan effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

33.    "*Entity*" means any entity, as defined in section 101(15) of the Bankruptcy Code.

34.    "*Equity Security*" means any equity security, as defined in section 101(16) of the Bankruptcy Code, in the Debtor.

35.    "*Estate*" means the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

36.    "*Executory Contract*" means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

37.     "*Exculpated Partie*s" means in its capacity as such during the Chapter 11 Case: the Debtor.

38.    "*Federal Judgment Rate*" means the federal post-judgment interest rate in effect as of the Petition Date.

39.    "*File*" or "*Filed*" means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Case.

40.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved

by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, re-argument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

41. "*General Unsecured Claim*" means any Unsecured Claim.

42. "*Governmental Unit*" means any governmental unit, as defined in section 101(27) of the Bankruptcy Code

43. "*GUC Recovery*" means the amount of Projected Disposable Income of the Debtor available for holders of General Unsecured Claims after accounting for payments to be made under the Plan to holders of Allowed Administrative Claims, Allowed Other Priority Claims, Allowed Priority Tax Claims, and Allowed Secured Claims for the period of three (3) years from the Effective Date. The Projected Disposable Income is shown in the Debtor's Projections attached to the Plan as <u>Exhibit A</u> (as may be amended, modified, or supplemented).

44. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

45. "*Interest*" means any Equity Security in the Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in the Debtor.

46. "*Landlord*" means MLRP 1215 Crosby, LLC, the landlord under the Lease.

47. "*Lease*" means that certain Industrial Lease Agreement entered into between Debtor and Landlord, dated June 8, 2022 for the lease of the premises located at 1215 W. Crosby, Suite 100, Carrollton, Texas 75006.

48. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

49. "*Midwest*" means Midwest Regional Bank.

50. "*Midwest Cure Payment*" means payment in an amount necessary to cure all existing defaults under the Midwest Loan.

51. "*Midwest Loan*" means the loan evidenced by that certain Promissory Note entered into by the Debtor, as borrower, and Midwest, as lender, in the original principal amount of $345,000, dated August 17, 2018.

52. "*Midwest Secured Claim*" means the Secured Claim of Midwest as provided in Proof of Claim Number 12 filed in the Chapter 11 Case by Midwest against the Debtor in the amount of $177,707.78.

53.    "*Organizational Documents*" means the Debtor's existing documents providing for corporate governance of the Debtor, including charters, bylaws, operating agreements, or other organizational documents, as applicable.

54.    "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

55.    "*Other Secured Claim*" means any Secured Claim, other than the Midwest Secured Claim, Celtic Secured Claim, and SBA Secured Claim, including any Claim arising under, derived from, or based upon any letter of credit issued in favor of the Debtor, the reimbursement obligation for which is either secured by a Lien on collateral or is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

56.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

57.    "*Petition Date*" means May 16, 2024, the date on which the Debtor commenced the Chapter 11 Case.

58.    "*Plan"* means this *Modified First Amended Chapter 11 Plan of Reorganization of Grand Fusion Housewares, LLC*, as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the terms of the Plan, including all exhibits, supplements, appendices, and schedules to the Plan.

59.    "*Plan Completion Date*" means the date that is thirty-six (36) months after the Effective Date.

60.    "*Plan Distribution*" means a payment or distribution to holders of Allowed Claims, Allowed Interests, or other eligible Entities under the Plan.

61.    "*Plan Settlement*" means the good faith compromise and settlement of all Claims, Interests, and controversies as described in <u>Article IV.A</u> of the Plan.

62.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

63.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

64.    "*Professional*" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, 1103, or 1183 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

65.    "*Professional Fee Claim*" means a Claim by a professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses

incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

66.    "*Projected Disposable Income*" means the Disposable Income projected in the Plan Projections attached hereto as Exhibit A.

67.    "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

68.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

69.    "*Released Parties*" means individually and collectively, and in each case, in its capacity as such:  (i)  each of the Debtor's officers, directors, and managers and (ii) with respect to the Debtor, and each of the foregoing Entities in clauses (i) through (ii), such Entity's current and former Affiliates and subsidiaries, and such Entities' and their current and former Affiliates' and subsidiaries' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

70.    "*Reorganized Debtor*" means the Debtor, or any successor thereto or assign thereof, by merger, consolidation, or otherwise, on and after the Effective Date.

71.    "*Retained Causes of Action*" means those Causes of Action of the Debtor and its Estate that are retained under the Plan, including those specifically identified on the Schedule of Retained Causes of Action and that are not released, waived, or transferred pursuant to the Plan.

72.    "*SBA*" means U.S. Small Business Administration.

73.    "*SBA Cure Payment*" means payment in an amount necessary to cure all existing defaults under the SBA Loan.

74.    "*SBA Loan*" means the loan evidenced by that certain 1st Modification of Note entered into by the Debtor, as borrower, and SBA, as lender, in the principal amount of $325,000, dated July 9, 2021.

75.    "*SBA Secured Claim*" means the Secured Claim of SBA as provided in Proof of Claim Number 15 filed in the Chapter 11 Case by SBA against the Debtor in the amount of $333,937.78.

76.    "*Schedules*" means, collectively, the schedules of assets and liabilities, and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as they may be amended, modified, or supplemented from time to time.

77.    "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtor and its Estate attached hereto as "**Exhibit C**.".

78.    "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtor pursuant to the Plan which is attached hereto as "**Exhibit D**."

79.    "*Secured Claim*" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

80.    "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

81.    "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law.

82.    "*Subchapter V Trustee*" means the duly appointed sub-chapter V trustee.

83.    "*Sublease*" means that certain Sublease Agreement effective as of December 11, 2023 entered into between Debtor and Subtenant for the Subtenant's lease of the entirety of premises located at 1215 W. Crosby, Suite 100, Carrollton, Texas 75006.

84.    "*Subtenant*" means Accelevation, LLC, the subtenant under the Sublease.

85.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

86.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

87.    "*Unsecured Claim*" means any Claim that is not an Administrative Claim, a Professional Fee Claim, a Secured Claim, a Midwest Secured Claim, a Celtic Secured Claim, a SBA Secured Claim, Secured Tax Claim, a Priority Tax Claim, or an Other Priority Claim.

*B.*    *Rules of Interpretation.*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors

and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's Case Management and Electronic Case Filing system.; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided*, *however*, that corporate governance matters relating to the Debtor or the Reorganized Debtor not incorporated in Texas shall be governed by the laws of the state of incorporation of the relevant Debtor or the Reorganized Debtor.

E.      *Controlling Document.*

In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

F.    *Background.*

This section provides a brief overview and history of the Debtor's business operations and summarizes the events leading up to the filing of the Chapter 11 Case.

1.    Overview and History of the Debtor and Events Leading to this Chapter 11 Case.

The Debtor was founded in 2016 on a shoe-string budget as a vehicle to bring unique consumer products to market in the United States.  The business experienced quick initial success generating over $700,000 in revenue in year one and doubling in size in year two with a fast-growing list of retail customers.  The Debtor developed a positive reputation in the inventory community leading to a steady flow of new products. Retail distribution continued to expand rapidly. However, the company continually experienced hurdles that challenged profitability.  And despite rapid growth, the company was marginally profitable and required a steady flow of capital to fund growth in inventory.  The COVID-19 pandemic caused further strain on profitability, as demand decreased and costs of goods and freight rates increased substantially.

Unfortunately, in 2023 the industry experienced a sudden decline in consumer demand. Retailers were already overstocked from the pandemic, and competitors had a glut of inventory creating a sudden decline in demand across the industry.

Despite these setbacks, the Debtor believed it would recover and it would resume growth in 2024 and 2025. However, small initial operational losses limited the Debtor's ability to raise capital from traditional lenders. The Debtor's owners invested significant personal capital in the business.  Eventually, the Debtor had no choice but to seek funding from unconventional lenders at exorbitant costs to fund cash flow.  The interest on those debts became an increasing burden on the company.  In an attempt to right the ship, the Debtor took aggressive action to reduce costs, down-size and move to a less expensive thirty-party warehouse.  The Debtor also engaged in efforts to raise new equity capital and/or sell the business outright. But the entire houseware industry was in distress, with companies much larger than the Debtor experiencing similar difficulties.  The Debtor went through a significant reduction in force and moved from its third-party warehouse to a smaller less expensive location in California.

The Debtor filed this case to commence an orderly restructuring of its business to maximize the value of its estate for the benefit of creditors. The Debtor has a profitable online business which has stabilized and is growing.  The Debtor has a small portfolio of unique products that perform very well on Amazon and other websites. Those products are proving to be consistently profitable. The Debtor intends to pay creditors over time through funds received from operation of its online business.

2.    Feasibility and Projected Disposable Income.

The feasibility of the Plan is supported by, among other things, the Debtor's Projections. The Debtor's Projections include the Debtors Projected Disposable Income over the three-year Plan term. The Debtor's Projections are attached hereto as Exhibit A.

The Debtor is current on all payments due on its loans with Midwest, Celtic, and the SBA. As a result, the Debtor believes that the Midwest Cure Payment, Celtic Cure Payment, and SBA Cure Payment will all be $0.00.

Prior to payment of any Administrative Claims on the Effective Date, the Debtor estimates that cash on hand on the Effective Date will be approximately $107,000.

3.    The Liquidation Analysis.

The Debtor's Liquidation Analysis, attached hereto as Exhibit B, demonstrates that the Debtor's Plan provides a superior recovery to all claimants and stakeholders than would occur in a liquidation of the Debtor in a case under chapter 7 of the Bankruptcy Code.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

*A.    Administrative Claims.*

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtor or the Reorganized Debtor each holder of an Allowed Administrative Claim (other than holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such holder and the Debtor or the Reorganized Debtor, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except for Professional Fee Claims, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtor no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date. Objections to such requests must be Filed and served on the requesting party within thirty (30) days after the Filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the

Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor, the Reorganized Debtor or its property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any notices, objection, or other action from the Reorganized Debtor or any action or approval by the Bankruptcy Court.

The Debtor estimates that outstanding and unpaid Administrative Claims as of the Effective Date will consist only of Professional Fee Claims and not exceed the amount of $40,000.

B.    *Professional Fee Claims.*

1.    <u>Final Fee Applications and Payment of Professional Fee Claims</u>. All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than 30 days after the Effective Date.  Objections to Professional Fee Claims shall be due 21 days after the Filing of the same.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtor shall promptly pay all Allowed Professional Fee Claims in Cash in the Allowed amount of such Professional Fee Claim.

2.    <u>Post-Effective Date Fees and Expenses</u>.  Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtor or the Reorganized Debtor, as the case may be, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtor.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Code.

C.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and paid in full through regular cash payments, including interest at the applicable rate, over a period not exceeding five years from the Petition Date of a value, as of the Effective Date, equal to the Allowed amount of such Claim.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.     *Classification of Claims and Interests.*

      This Plan designates and classifies Claims and Interests into Classes 1 through 8. Except for the Claims addressed in <u>Article II</u> of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving Plan Distributions only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. The classification of Claims and Interests against the Debtor pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept (Not Entitled to Vote) |
| 2 | Secured Tax Claims | Unimpaired | Deemed to Accept (Not Entitled to Vote) |
| 3 | Other Secured Claims | Impaired | Entitled to Vote |
| 4 | Midwest Secured Claim | Unimpaired | Deemed to Accept (Not Entitled to Vote) |
| 5 | Celtic Secured Claim | Unimpaired | Deemed to Accept (Not Entitled to Vote) |
| 6 | SBA Secured Claim | Unimpaired | Deemed to Accept (Not Entitled to Vote) |
| 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| 8 | Interests in the Debtor | Unimpaired | Deemed to Accept (Not Entitled to Vote) |

B.     *Treatment of Claims and Interests.*

    1.     <u>Class 1 - Other Priority Claims</u>

        (a)     *Classification*:  Class 1 consists of any Other Priority Claims against the Debtor.

        (b)     *Treatment*:  On the Effective Date, except to the extent that a holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive Cash in an amount equal to such Allowed Other

Priority Claim on the later of: (i) the Effective Date; or (ii) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Other Priority Claim.

(c)  *Voting*:  Class 1 is Unimpaired and is deemed to have accepted the Plan.

2.  <u>Class 2 – Secured Tax Claims</u>

(a)  *Classification*:  Class 2 consists of any Secured Tax Claims against the Debtor.

(b)  *Treatment*:  Except to the extent that a holder of an Allowed Secured Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Secured Tax Claim, each Allowed Secured Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(D) of the Bankruptcy Code and paid in full through regular monthly cash payments, commencing thirty (30) days following the Effective Date and concluding on or before the 60th anniversary of the Petition Date, with interest from the Petition Date through the Effective Date and from the Effective Date through the date of payment in full at the applicable state statutory rate of 1% per month pursuant to 11 U.S.C. §§ 506(b), 511, and 1129.  In the event of a claim objection, a holder of an Allowed Secured Tax Claim shall be entitled to interest that accrues while the Claim objection is pending.  Each holder of an Allowed Secured Tax Claim shall retain its Liens securing such Claim to the extent of the Allowed amount of such Claim until the full amount of such Allowed Secured Tax Claim has been paid in full.

(c)  *Voting*:  Class 2 is Unimpaired and is deemed to have accepted the Plan.

3.  <u>Class 3 – Other Secured Claims</u>

(a)  *Classification*:  Class 3 consists of all Other Secured Claims.

(b)  *Treatment*:  Class 3 shall contain separate subclasses for each Other Secured Claim against the Debtor. On the Effective Date, except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Other Secured Claim, each holder of an Allowed Other Secured Claim shall (i) retain the valid and perfected liens on the collateral securing such Secured Claims to the extent of the Allowed amount of such Secured Claims determined in accordance with section 506(a) of the Bankruptcy Code, and (ii) receive on account of such Allowed Other Secured Claim deferred cash payments totaling at least the Allowed amount of such Secured Claim in accordance with section 506(a) of the Bankruptcy Code, of a value, of the Effective Date, of at least the value of such holder's interest in the Estate's interest in such property, *provided,*

*however*, that for any Secured Claim that was identified on the Debtor's Schedules as being secured by a collateral having a value of $0, such Claim shall be deemed an Unsecured Claim.

(c)  *Voting*:  Class 3 is Impaired and is entitled to vote to accept or reject the Plan.

4.  <u>Class 4 – Midwest Secured Claim</u>

(a)  *Classification*:  Class 4 consists of the Midwest Secured Claim.

(b)  *Treatment*:  On the Effective Date, except to the extent that a holder of an Allowed Midwest Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the Allowed Midwest Secured Claim: (i) the Allowed Midwest Secured Claim shall be Reinstated in accordance with section 1124 of the Bankruptcy Code; and (ii) Midwest shall receive the Midwest Cure Payment, which shall be applied to the indebtedness due under such claim and shall be deemed to fully and finally cure all defaults existing under the Midwest Secured Claim.

(c)  *Voting*:  Class 4 is Unimpaired and is deemed to have accepted the Plan.

5.  <u>Class 5 – Celtic Secured Claim</u>

(a)  *Classification*:  Class 5 consists of the Celtic Secured Claim.

(b)  *Treatment*:  On the Effective Date, except to the extent that a holder of an Allowed Celtic Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the Allowed Celtic Secured Claim: (i) the Celtic Secured Claim shall be Reinstated in accordance with section 1124 of the Bankruptcy Code; and (ii) Celtic shall receive the Celtic Cure Payment, which shall be applied to the indebtedness due under such claim and be deemed to fully and finally cure all defaults existing under the Celtic Secured Claim.

(c)  *Voting*:  Class 5 is Unimpaired and is deemed to have accepted the Plan.

6.  <u>Class 6 – SBA Secured Claim</u>

(a)  *Classification*:  Class 6 consists of the SBA Secured Claim.

(b)  *Treatment*:  On the Effective Date, except to the extent that a holder of an Allowed SBA Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the Allowed SBA Secured Claim: (i) the SBA Secured Claim shall be Reinstated in accordance with section 1124 of the

Bankruptcy Code; and (ii) SBA shall receive the SBA Cure Payment, which shall be applied to the indebtedness due under such claim and be deemed to fully and finally cure all defaults existing under the SBA Secured Claim.

    (c)    *Voting*:  Class 6 is Unimpaired and is deemed to have accepted the Plan.

    7.    <u>Class 7 - General Unsecured Claims</u>

    (a)    *Classification:*  Class 7 consists of all General Unsecured Claims against any Debtor.

    (b)    *Treatment:* Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each General Unsecured Claim, each holder of an Allowed Class General Unsecured Claim shall receive its *pro rata* share of the GUC Recovery.  The GUC Recovery shall be paid by the Debtor to holders of Allowed General Unsecured Claims in  annual installments commencing on the first anniversary of the Effective Date and concluding on the Plan Completion Date in accordance with the Plan Projections.

    (c)    *Voting:*  Class 7 is Impaired and is entitled to vote to accept or reject the Plan.

    8.    <u>Class 8 - Interests in the Debtor</u>

    (a)    *Classification*:  Class 8 consists of all the Interests in the Debtor.

    (b)    *Treatment*:  On the Effective Date, all Class 8 Interests shall remain in place at their prepetition priority and status.

    (c)    *Voting*:  The Class 8 Interests are Unimpaired and are deemed to have accepted the Plan.

**C.**    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any Unimpaired Claims, including, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.**    *General Settlement of Claims and Interests.*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise

and settlement of all Claims and Interests and controversies resolved pursuant to the Plan (collectively, the "**Plan Settlement**").  The Plan shall be deemed a motion to approve the Plan Settlement pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Plan Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court the Plan Settlement is fair, equitable, reasonable and in the best interests of the Debtor and its Estate. All distributions made to holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.     *Restructuring Transactions.*

On the Effective Date, the Debtor or the Reorganized Debtor shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the terms set forth in the Plan (collectively, the **"Restructuring Transactions"**).  The actions to implement the Restructuring Transactions may include:  (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan.

C.     *Reorganized Debtor.*

The Reorganized Debtor shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan.

D.     *Sources and Uses of Consideration for Plan Distributions.*

The Reorganized Debtor shall fund Plan Distributions with: (1) Cash on hand; (2) the Royalty and Sales Commission due to the Debtor in connection with the Debtor's sale of the Transferred Assets to Evriholder Products, LLC; and (3) the proceeds of operations.

E.     *Corporate Existence.*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, the Debtor shall continue to exist after the Effective Date as a separate limited liability company with all the powers of a limited liability company pursuant to the applicable law in the jurisdiction in which the Debtor is incorporated or formed.

F.      *Vesting of Assets in the Reorganized Debtor.*

Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Estate, all of the Debtor's and Estate's Causes of Action, including all of the Retained Causes of Action of the Debtor and its Estate specifically enumerated in the Schedule of Retained Causes of Action, and any property acquired by the Debtor pursuant to the Plan, shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action, including the Retained Causes of Action, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

G.      *Cancellation of Existing Securities and Agreements.*

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims, including credit agreements, shall be cancelled and the obligations of the Debtor shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to this Plan. For the avoidance of doubt, the Equity Securities and Interests in the Debtor existing as of the Petition Date shall not be cancelled and shall be reinstated upon the Effective Date in the Reorganized Debtor in the same nature and same priority and extent as existing in the Debtor as of the Petition Date.

H.      *Corporate Action.*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including (1) implementation of the Restructuring Transactions contained in the Plan; and (2) all other actions contemplated by the Plan  All matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtor or the Reorganized Debtor, as applicable.  On or (as applicable) prior to the Effective Date, the appropriate managers, and officers of the Debtor or the Reorganized Debtor, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtor.  The authorizations and approvals contemplated by this Article IV.J shall be effective notwithstanding any requirements under non-bankruptcy law. The Plan requires no rate changes that are subject to regulatory approval per section 1129(a)(6), and the Debtor has no retiree benefits to be continued under the Plan per section 1129(a)(13).

I.      *Organizational Documents.*

On or immediately prior to the Effective Date, the Organizational Documents shall be deemed to be in force, including as may be necessary to effectuate the transactions contemplated by the Plan. After the Effective Date, the Reorganized Debtor may amend and restate its Organizational Documents and other constituent documents as permitted by the terms thereof and applicable law.

To the extent required by section 1123(a)(6) of the Bankruptcy Code, the Reorganized Debtor will amend its Organizational Documents to prohibit the issuance of non-voting equity securities and to ensure an appropriate distribution of voting power among any remaining equity classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

After the Effective Date, the Reorganized Debtor may amend and restate all of its corporate and Organizational Documents and other constituent documents, as permitted by the laws of its state of organization and its Organizational Documents.

J.      *Directors and Officers of the Reorganized Debtor.*

As of the Effective Date, the managers, managing members, and officers of the Debtor existing on the Petition Date shall be reinstated and continue in such roles for the Reorganized Debtor in the same capacity and same manner as existing on the Petition Date.

On and after the Effective Date, the managers and managing members of the Reorganized Debtor shall consist of those entities and individuals serving in those roles on the Petition Date. The managers include the following individuals: Brendan Bauer, Hilton Blieden, and Xiaofei (Della) Ou. The officers of the Reorganized Debtor shall continue to be Brendan Bauer, CEO, Xiaofei (Della) Ou, COO, and Hilton Blieden as CFO. Mr. Blieden will continue to receive compensation for his role as Debtor's manager and CFO. To the extent applicable and not previously disclosed in this Plan, if any such director or officer is an "insider" as defined in section 101(31) of the Bankruptcy Code, the nature of any compensation to be paid to such director or officer, if any, will also be disclosed to the extent required under the Bankruptcy Code. If necessary, the Organizational Documents will provide that subsequent managers of the Reorganized Debtor will be elected by the members holding a majority of the equity Interests in the Reorganized Debtor.

K.      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtor, and the officers and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

L.     *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

M.     *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to <u>Article VIII</u> hereof, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Avoidance Actions and Causes of Action of the Debtor and its Estate, whether arising before or after the Petition Date, including all Causes of Action specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtor's rights to commence, prosecute, or settle such Avoidance Actions and Causes of Action shall be preserved and retained notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtor pursuant to the releases and exculpations contained in the Plan.

The Reorganized Debtor reserves and shall retain all such Avoidance Actions and Causes of Action of the Debtor and its Estate notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtor, except as otherwise expressly provided in the Plan, including <u>Article VIII</u> of the Plan. The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Avoidance Actions and Causes of Action. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

No Entity may rely on the absence of a specific reference in the Plan to any Causes of Action against it as any indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against it. The Debtor or the Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

Except as otherwise provided herein, on the Effective Date, all Executory Contracts or Unexpired Leases not (i) previously assumed or rejected pursuant to an order of the Bankruptcy Court; (ii) contained on the Schedule of Rejected Executory Contracts and Unexpired Leases; (iii) subject to a motion to reject filed and pending as of the Effective Date; and (iv) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, will be ***assumed*** in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

Upon the Effective Date, the Sublease shall be assumed and assigned to Landlord in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. Upon the Effective Date, and after the effect of the assumption and assignment of the Sublease to the Landlord, the Lease shall be deemed rejected.

Notwithstanding the foregoing, any Executory Contracts or Unexpired Leases that are the subject of a pending, unresolved objection to any proposed cure amount or motion to reject, to assume, or to assume and assign as of the Effective Date, shall be rejected, assumed, or assumed and assigned in accordance with the provision of the Order(s) finally adjudicating such pending, unresolved objections or motions.  Nothing herein shall prohibit the Debtor from amending or modifying any pending, unresolved motion to reject, assume, or assume and assign prior to the final adjudication of such motion (with leave of the Bankruptcy Court if such leave is otherwise required by applicable Rule).

**The Debtor has proposed no cures or $0.00 cure amounts for all Executory Contracts and Unexpired Leases to be assumed or assumed and assigned under this Plan.  All objections to Debtor's proposed cure amounts as set forth herein that are not made in writing and timely filed with the Bankruptcy Court shall be deemed waived, released, or overruled as of the Effective Date.**

B.    *Pass-Through*

Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the operation of the Reorganized Debtor's business, but not otherwise addressed as a Claim or Interest or assumed under Article V of the Plan, including nonexclusive or exclusive patent, trademark, copyright, or other intellectual property licenses, and other contracts not assumable under section 365(c) of the Bankruptcy Code, shall, in the absence of any other treatment under the Plan or Confirmation Order, be passed through the Chapter 11 Case for the benefit of the Reorganized Debtor, provided that, notwithstanding anything to the contrary herein, any Claim thereunder shall be treated in accordance with the distribution provisions of the Plan.

C.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases

pursuant to the Plan or the Confirmation Order, if any, including, for the avoidance of doubt, all Executory Contracts and Unexpired Leases identified on, and rejected by, the Schedule of Rejected Executory Contracts and Unexpired Leases, must be Filed with the Bankruptcy Court within 30 days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor or the Reorganized Debtor, the Estate, or its property without the need for any objection by the Reorganized Debtor or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims.

D.      *Preexisting Obligations to the Debtor under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor or the Reorganized Debtor under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtor contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

E.      *Insurance Policies.*

Each of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (1) the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtor.

F.      *Reservation of Rights.*

Nothing contained in the Plan shall constitute an admission by the Debtor that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease under the Plan.

G.     *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.     *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each holder of an Allowed Claim or Allowed Interests (as applicable) shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in <u>Article VII</u> hereof.  Except as otherwise provided in the Plan, holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.     *Disbursing Agent.*

Except as otherwise provided herein, all Plan Distributions shall be made by the Disbursing Agent on the Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtor.

C.      *Rights and Powers of Disbursing Agent.*

    1.      <u>Powers of the Disbursing Agent</u>.  The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. If the Plan is confirmed as a Non-Consensual Plan, the Reorganized Debtor, as Disbursing Agent, shall file post-confirmation quarterly operating reports until all payments to be made under the Plan are completed.

    2.      <u>Expenses Incurred on or After the Effective Date</u>.  Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtor.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

    1.      <u>Record Date for Distribution</u>.  On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

    2.      <u>Delivery of Distributions in General</u>.  Except as otherwise provided herein, the Disbursing Agent shall make distributions to holders of Allowed Claims as of the Distribution Record Date at the address for each such holder as indicated on the Debtor's records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtor; *provided further*, *however*, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that holder.

    3.      <u>Minimum Distributions</u>.  No Cash payment of less than $50.00 shall be made to a holder of an Allowed Claim on account of such Allowed Claim.

    4.      <u>Undeliverable Distributions and Unclaimed Property</u>.  In the event that any distribution to any holder of an Allowed Claim is returned as undeliverable, the Disbursing Agent shall attempt to determine the actual then-current address of such holder.  If the current address is identified, the Disbursing Agent shall make a second attempted distribution.  To the extent that any distribution is unclaimed as of the earlier of 3 months from the initial distribution attempt or 6 months after the Distribution Record Date, such distributions shall be deemed unclaimed property.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred.

E.      *Manner of Payment.*

1.      All distributions of Cash to the holders of Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the Debtor.

2.      At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F.      *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor and the Disbursing Agent shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

G.      *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtor, and no holder of a prepetition Claim against the Debtor shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

I.      *Setoffs and Recoupment.*

Except as expressly provided in this Plan, Reorganized Debtor may, pursuant to applicable law, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that Reorganized Debtor may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, *however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any

Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that Reorganized Debtor or its successor may possess against the applicable holder.

*J.      Claims Paid or Payable by Third Parties.*

1.      <u>Claims Paid by Third Parties</u>.  The Debtor or the Reorganized Debtor shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor.  Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall, within 14 days of receipt thereof, repay or return the distribution to the Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.      <u>Claims Payable by Third Parties</u>.  No Plan Distribution shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      <u>Applicability of Insurance Policies</u>.  Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

*A.      Allowance of Claims.*

The Debtor and the Reorganized Debtor, as applicable, shall have the exclusive authority to determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a Claim subject to any Proof of Claim that is Filed is Allowed.  Upon such determination, the

Debtor or Reorganized Debtor, as applicable, may update the Claims Register to reflect such Claims as Allowed and, upon delivery of the applicable treatment for such Unimpaired Claims, to mark such Proofs of Claims as satisfied.

B.      *Claims Administration Responsibilities.*

        Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor shall have the sole authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

        After the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

C.      *Disputed Claims Process.*

        If the Debtor or Reorganized Debtor, as applicable, dispute any Claim that is not Allowed as of the Effective Date pursuant to Section 8.1 of the Plan or a Final Order entered by the Bankruptcy Court (which may include the Confirmation Order), the Debtor or Reorganized Debtor, as applicable, shall File an objection with, and the dispute shall be determined, resolved, or adjudicated before, the Bankruptcy Court.

D.      *Estimation of Claims and Interests.*

        Before, on, or after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to the allowance of, or any ultimate distribution on, such Claim or Interest.

E.      *Adjustment to Claims or Interests without Objection.*

        Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized

Debtor without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *Time to File Objections to Claims.*

Any objections to Claims shall be Filed on or before the later of (1) 180 days after the Effective Date and (2) such other period of limitation as may be specifically fixed by the Debtor or the Reorganized Debtor or by a Final Order of the Bankruptcy Court for objecting to such Claims or extending any deadline for objecting to such Claims.

G.      *Disallowance of Claims or Interests.*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as any objection to those Claims or Interests have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by the Entity have been turned over or paid to the Reorganized Debtor.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

H.      *Amendments to Claims or Interests.*

Except as provided herein, on or after the Effective Date, a Claim or Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor and any such new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action.

I.      *No Distributions Pending Allowance.*

If a Claim is a Disputed Claim, then the date for any Distribution as to such Disputed Claim shall be determined based upon its date of Allowance, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan. No Distribution shall be made on account of a Disputed Claim until it is Allowed. Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Disputed Claim for purposes of estimates, allocations, and Distributions under the Plan. Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

J.      *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

K.      *Rights under Section 505.*

All Priority Tax Claims, Secured Tax Claims, and other tax Claims shall remain subject to section 505 of the Bankruptcy Code. The Reorganized Debtor shall retain the right to a determination of the amount or legality of any tax pursuant to section 505 of the Bankruptcy Code as to any tax Claim. The Reorganized Debtor may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any tax Claim.

# ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Discharge of Claims.*

The Debtor shall receive a discharge of all debts, as set forth more fully below, arising before the Effective Date. The timing of the discharge will depend on whether the Plan, as to the Debtor, is confirmed as a consensual plan or a cramdown plan pursuant to Bankruptcy Code sections 1191(a) or (b), respectively. *See* 11 U.S.C. § 1181(c).

1.      Consensual Plan - Discharge Under Bankruptcy Code section 1141(d).

IF THIS PLAN IS CONFIRMED PURSUANT TO BANKRUPTCY CODE SECTION 1191(A), THE DEBTOR SHALL RECEIVE A DISCHARGE PURSUANT TO BANKRUPTCY CODE SECTION 1141(D), AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR IN ANY CONTRACT, INSTRUMENT, OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THE PLAN, THE DISTRIBUTIONS, RIGHTS, AND TREATMENT THAT ARE PROVIDED IN THE PLAN SHALL BE IN COMPLETE SATISFACTION, DISCHARGE, AND RELEASE, EFFECTIVE AS OF THE EFFECTIVE DATE, OF CLAIMS, INTERESTS, AND CAUSES OF ACTION OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS OR INTERESTS FROM AND AFTER THE PETITION DATE, WHETHER KNOWN OR UNKNOWN, AGAINST, LIABILITIES OF, LIENS ON, OBLIGATIONS OF, RIGHTS AGAINST, AND INTERESTS IN, THE DEBTOR OR ANY OF ITS ASSETS OR PROPERTIES, REGARDLESS OF WHETHER ANY PROPERTY SHALL HAVE BEEN DISTRIBUTED OR RETAINED PURSUANT TO THE PLAN ON ACCOUNT OF SUCH CLAIMS AND INTERESTS, INCLUDING DEMANDS, LIABILITIES, AND CAUSES OF ACTION THAT AROSE BEFORE THE EFFECTIVE DATE, ANY LIABILITY (INCLUDING WITHDRAWAL LIABILITY) TO THE EXTENT SUCH CLAIMS OR INTERESTS RELATE TO SERVICES

PERFORMED BY EMPLOYEES OF THE DEBTOR PRIOR TO THE EFFECTIVE DATE AND THAT ARISE FROM A TERMINATION OF EMPLOYMENT, ANY CONTINGENT OR NON CONTINGENT LIABILITY ON ACCOUNT OF REPRESENTATIONS OR WARRANTIES ISSUED ON OR BEFORE THE EFFECTIVE DATE, AND ALL DEBTS OF THE KIND SPECIFIED IN BANKRUPTCY CODE SECTIONS 503, 502(G), 502(H), OR 502(I), IN EACH CASE WHETHER OR NOT: (1) A PROOF OF CLAIM BASED UPON SUCH DEBT OR RIGHT IS FILED OR DEEMED FILED PURSUANT TO SECTION BANKRUPTCY CODE 501; (2) A CLAIM OR INTEREST BASED UPON SUCH DEBT, RIGHT, OR INTEREST IS ALLOWED PURSUANT TO BANKRUPTCY CODE SECTION 502; OR (3) THE HOLDER OF SUCH A CLAIM OR INTEREST HAS ACCEPTED THE PLAN. THE CONFIRMATION ORDER SHALL BE A JUDICIAL DETERMINATION OF THE DISCHARGE OF ALL CLAIMS AND INTERESTS AGAINST THE DEBTOR SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE.

      2.    <u>Non-Consensual – Discharge Under Section 1192</u>.

IF THIS PLAN IS CONFIRMED AS A CRAMDOWN PLAN PURSUANT TO BANKRUPTCY CODE SECTION 1191(B), THE DEBTOR SHALL RECEIVE A DISCHARGE AS SOON AS PRACTICABLE AFTER COMPLETION BY SUCH DEBTOR OF ALL PAYMENTS DUE UNDER THE PLAN. *SEE* 11 U.S.C. § 1192. EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR IN ANY CONTRACT, INSTRUMENT, OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THE PLAN, THE DISTRIBUTIONS, RIGHTS, AND TREATMENT THAT ARE PROVIDED IN THE PLAN SHALL BE IN COMPLETE SATISFACTION, DISCHARGE, AND RELEASE, OF CLAIMS, INTERESTS, AND CAUSES OF ACTION OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS OR INTERESTS FROM AND AFTER THE PETITION DATE, WHETHER KNOWN OR UNKNOWN, AGAINST, LIABILITIES OF, LIENS ON, OBLIGATIONS OF, RIGHTS AGAINST, AND INTERESTS IN, THE DEBTOR OR ANY OF ITS ASSETS OR PROPERTIES, REGARDLESS OF WHETHER ANY PROPERTY SHALL HAVE BEEN DISTRIBUTED OR RETAINED PURSUANT TO THE PLAN ON ACCOUNT OF SUCH CLAIMS AND INTERESTS, INCLUDING DEMANDS, LIABILITIES, AND CAUSES OF ACTION THAT AROSE BEFORE THE EFFECTIVE DATE, ANY LIABILITY (INCLUDING WITHDRAWAL LIABILITY) TO THE EXTENT SUCH CLAIMS OR INTERESTS RELATE TO SERVICES PERFORMED BY EMPLOYEES OF THE DEBTOR PRIOR TO THE EFFECTIVE DATE AND THAT ARISE FROM A TERMINATION OF EMPLOYMENT, ANY CONTINGENT OR NON CONTINGENT LIABILITY ON ACCOUNT OF REPRESENTATIONS OR WARRANTIES ISSUED ON OR BEFORE THE EFFECTIVE DATE, AND ALL DEBTS OF THE KIND SPECIFIED IN BANKRUPTCY CODE SECTIONS 503, 502(G), 502(H), OR 502(I), IN EACH CASE WHETHER OR NOT: (1) A PROOF OF CLAIM BASED UPON SUCH DEBT OR RIGHT IS FILED OR DEEMED FILED PURSUANT TO SECTION BANKRUPTCY CODE 501; (2) A CLAIM OR INTEREST BASED UPON SUCH DEBT, RIGHT, OR INTEREST IS ALLOWED PURSUANT TO BANKRUPTCY CODE SECTION 502; OR (3) THE HOLDER OF SUCH A CLAIM OR INTEREST HAS ACCEPTED THE PLAN. THE CONFIRMATION ORDER SHALL BE A JUDICIAL DETERMINATION OF THE DISCHARGE OF ALL CLAIMS AND INTERESTS AGAINST THE DEBTOR SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE AND THE FINAL DISTRIBUTION DATE CONTEMPLATED UNDER THE PLAN.

**B.**     *Release of Liens.*

Except as otherwise provided in the, the Plan, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for the Midwest Secured Claim, the Celtic Secured Claim, and the SBA Secured Claim that are being reinstated in accordance with section 1124 of the Bankruptcy Code under the Plan, all mortgages, deeds of trust, Liens (including any UCC lien notices sent by any Entity to another third-party Entity asserting a lien or interest in Cash, funds, or receivables owned by or otherwise due to the Debtor as of the Petition Date), pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.  Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of the Debtor (including any cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Reorganized Debtor to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

**C.**     *Releases by the Debtor.*

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, the Released Parties are each deemed released and discharged by the Debtor, the Reorganized Debtor, and its Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, including any derivative claims asserted or assertable on behalf of the Debtor, that the Debtor, the Reorganized Debtor, or the Debtor's Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, the Chapter 11 Case, the Plan, any Restructuring Transaction, the Plan Settlement, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.C by the Debtor, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this Article VIII.C is: (1) in exchange for the good and valuable consideration provided by the Released Parties and a good faith settlement and compromise of such Claims; (2) in the best interests of the Debtor and all holders of Interests and Claims; (3) fair, equitable, and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to the Debtor or Reorganized Debtor asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

No creditor or Entity holding a Claim shall be permitted to assert any Claim of the Debtor, Reorganized Debtor, or the Estate against the Released Parties as set forth above.

**D.    *Exculpation.***

The Exculpated Parties shall not have or incur any liability for, and each Exculpated Party is released and exculpated from, any claim or Cause of Action related to any act, event, or omission occurring from the Petition Date to the Effective Date in connection with or arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, the Consummation of the Plan, any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Plan, and the administration of the Plan or the assets and property to be distributed pursuant to the Plan (including unclaimed property under the Plan), unless such Entity's action is determined as (i) bad faith; (ii) actual fraud; (iii) willful misconduct; or (iv) gross negligence, in each case by a Final Order of a court of competent jurisdiction. Each Entity may reasonably rely upon the opinions of its counsel, certified public accountants, and other experts or professionals. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**E.    *Injunction.***

Except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been discharged or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, and the Exculpated Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities

on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. For the avoidance of doubt, an Entity asserting an event of default under the Plan in compliance with the applicable provisions of the Plan shall not be considered interference with the implementation or Consummation of the Plan.

F.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor, or another Entity with whom the Reorganized Debtor have been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

G.      *Document Retention.*

On and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtor.

H.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.      the Bankruptcy Court shall have entered the Confirmation Order which shall;

   (a)      authorize the Debtor to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, and other agreements or documents created in connection with the Plan;

   (b)      decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

   (c)      authorize the Debtor, as applicable or necessary, to: (i) implement the Restructuring Transactions; and (ii) make all distributions and issuances as required under the Plan; and

   (d)      authorize the implementation of the Plan in accordance with its terms.

2.      the Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.      all professional fees and expenses of retained professionals required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date have been reserved pending approval by the Bankruptcy Court; and

4.      the Debtor shall have implemented the Restructuring Transactions and all transactions contemplated herein.

B.      *Waiver of Conditions.*

The conditions to Confirmation and Consummation set forth in this Article IX may be waived by the Debtor without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.      *Effect of Failure of Conditions.*

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims by the Debtor, Claims, or Interests; (2) prejudice in any manner the rights of the Debtor, any holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any holders of Claims or Interests, or any other Entity.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.     Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtor reserves the right to modify the Plan, whether such modification is material or immaterial.

*B.     Revocation or Withdrawal of Plan.*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtor revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.     decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.     resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtor amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 or 1191 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII hereof and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

12.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid;

13.      enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.      determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

15.      enter an order concluding or closing the Chapter 11 Case;

16.      adjudicate any and all disputes arising from or relating to Plan Distributions;

17.      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and released granted in the Plan, including under <u>Article VIII</u> hereof, regardless of whether such termination occurred prior to or after the Effective Date;

22.     enforce all orders previously entered by the Bankruptcy Court; and

23.     hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

*A.     Immediate Binding Effect.*

Subject to <u>Article IX.A</u> hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

*B.     Additional Documents.*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan.  The Debtor or the Reorganized Debtor and all holders of Claims or Interests receiving Plan Distributions and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

*C.     Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the

Plan, shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

D.     *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.     *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

F.     *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.     *Exhibits.*

All exhibits and documents included herein are a part of the Plan as if set forth in full in the Plan.

H.     *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) nonseverable and mutually dependent.

I.      *Default.*

No default in the performance of this Plan shall automatically result in the termination of the Plan or constitute a revocation of the Confirmation Order. Unless otherwise specified in the Plan, if any party in interest believes that the Debtor/Reorganized Debtor are in default of any requirement of this Plan, such party shall provide written notice of such claimed default to the Debtor/Reorganized Debtor and Counsel to the Debtor with a ten (10) day opportunity to cure prior to filing a motion with the Bankruptcy Court regarding the alleged noncompliance or otherwise seeking Bankruptcy Court enforcement of the terms of this Plan. After the Effective Date, in the event of failure to cure the alleged default timely, the party asserting the alleged default shall be entitled to pursue collection of all amounts owed pursuant to applicable nonbankruptcy law from the Debtor/Reorganized Debtor without further recourse to the Bankruptcy Court, *provided, however*, that the Debtor/Reorganized Debtor may dispute any alleged default and seek to enforce the terms of the Plan against the party asserting the alleged default. In such instance, the Bankruptcy Court shall have exclusive jurisdiction to determine whether a default under the Plan has occurred.

J.      *Notices.*

Unless and until otherwise directed, any pleading, notice or other document required or permitted by the Plan to be served on or delivered to the Debtor, or, if after the Effective Date, the Reorganized Debtor, and the U.S. Trustee, as the case may be, shall be sent by U.S. first class mail, postage prepaid, and email to:

Debtor or Reorganized Debtor:

Grand Fusion Housewares, LLC
12 Partridge
Irving, CA 92604
Email: hilton@grandfusionhousewares.com

-and-

Bryan C. Assink
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, TX 76102
Email: bryan.assink@bondsellis.com

Subchapter V Trustee:

Behrooz Vida
The Vida Law Firm, PLLC
3000 Central Drive
Bedford, TX 76021
Email: behrooz@vidalaw.com

United States Trustee:

Susan B. Hersh
Office of the U.S. Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242
Email: Susan.hersh@usdoj.gov

K.      *Closing of Chapter 11 Case.*

All fees remaining due under 28 U.S.C. § 1930 shall be paid at Confirmation. The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

L.      *Waiver or Estoppel.*

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

M.      *Conflicts.*

Except as set forth in the Plan, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

*[Remainder of Page Intentionally Left Blank]*

Dated: December 17, 2024

**GRAND FUSION HOUSEWARES, LLC**

By:      /s/ Hilton Blieden

Name:  Hilton Blieden

Title:  Authorized Signatory